EDYTHE SOCHARD ET AL. *v.* ST. VINCENT'S
MEDICAL CENTER ET AL.
(3788)

DUPONT, C. J., BORDEN and DALY, Js.

Argued April 9—decision released June 24, 1986

*Mary K. Zackrison,* with whom, on the brief, was *Thomas M. Yuditski,* for the appellant (plaintiff).

*James F. Stapleton,* with whom, on the brief, was *Peter M. Nolin,* for the appellee (named defendant).

DUPONT, C. J. The plaintiff[1] appeals from the judgment rendered pursuant to a directed verdict for the defendants[2] in this medical malpractice action. She claims that the trial court erred in excluding certain expert medical testimony.

The following facts are not in dispute. The plaintiff's decedent, Jerome Sochard, entered the defendant's

---

[1] The plaintiff brought this wrongful death action individually and as executrix of the decedent's estate. As used in this opinion, the plaintiff refers to Edythe Sochard individually and as executrix of the estate.

[2] This action was commenced against Cardiovascular Associates, P.C., Walter Lucia, M.D., and St. Vincent's Medical Center. A verdict was directed in favor of all three defendants. An appeal was taken but was subsequently withdrawn as to that portion of the judgment relating to Cardiovascular Associates, P.C., and Walter Lucia, M.D. As used in this opinion, the defendant refers to St. Vincent's Medical Center.

emergency room suffering from what was diagnosed as a myocardial infarction.[3] Emergency treatment resulted in the stabilization of the patient's condition, after which he was admitted to the hospital's intensive care unit by Walter Lucia, the patient's cardiologist. The patient's condition remained stable until 3:30 a.m. when he experienced irregular heartbeats and a reduced heart rate. The attending nurse informed an intern on duty,[4] and the patient's dosage of a medication was increased which stabilized his condition. Lucia visited the patient the following morning and, after speaking with him for several minutes, concluded that he was in a stable condition. Soon after the doctor left, the patient went into cardiac arrest and died despite efforts at cardiopulmonary resuscitation and the insertion of a pacemaker.

The plaintiff brought this action for wrongful death alleging that the defendant hospital, acting through its nurses and interns, failed to monitor the decedent properly and failed to communicate the decedent's difficulties to the attending cardiologist on a regular basis. It is also alleged that the defendant failed to insert a pacemaker or to monitor the patient in a proper manner prior to cardiac arrest.

During the course of the trial, the plaintiff introduced evidence that the defendant failed to observe its duty of care by neglecting to insert a Swan-Ganz catheter at 3:30 a.m., when it became apparent that the patient was susceptible to further cardiac difficulty. The patient's expert witness, Norman Cagin, a physician specializing in cardiology, testified that the failure to employ this diagnostic device made it impossible to

---

[3] A myocardial infarction is a "region of dead or dying tissue in the muscle of the heart which is the result of an obstruction to the blood circulation . . . ." Schmidt, Attorney's Dictionary of Medicine.

[4] It is disputed whether the intern visited the patient during the night. The patient's attending physician was not called.

determine whether the patient was suffering from hypovolemia,[5] which the plaintiff alleges may have caused the patient's death. The plaintiff's expert witness was then asked the following hypothetical question: "Doctor, do you have an opinion, with reasonable medical probability, that St. Vincent's Hospital, through its failure to use recognized and available diagnostic modalities and techniques, substantially increased the risk of Mr. Sochard's dying?" The defendant's counsel objected to the question for failure of the plaintiff to lay a proper foundation.

The defendant's objection focused on the lack of subordinate facts from which the expert witness could form an opinion as to what caused the patient's death, and the absence of any evidence demonstrating that the decedent died from a condition other than a contractile failure of the heart,[6] a condition which neither party alleged was treatable. The plaintiff argued that, had the defendant employed proper testing procedures, it might have been shown that the patient was suffering from hypovolemia, a treatable condition in approximately 80 percent of the cases. The plaintiff claims that the defendant's allegedly negligent conduct precluded her from establishing the cause of the patient's death. The trial court sustained the defendant's objection and disallowed the question because it was not based upon the evidence in the case.

The facts assumed in a hypothetical question must have their basis in the evidence on the record. See *Engelke* v. *Wheatley,* 148 Conn. 398, 410–11, 171 A.2d 402 (1961); see generally McCormick, Evidence (2d Ed. 1972) § 14. Whether a proper foundation has been laid to support a hypothetical question is an issue of fact

---

[5] Hypovolemia is a "condition in which the volume or quantity of blood in the body is below normal." Schmidt, Attorney's Dictionary of Medicine.

[6] A contractile failure of the heart was described by Lucia as meaning the inability of the heart to pump due to heart muscle loss.

for the trial court. *Spoto* v. *Hayward Mfg. Co.,* 2 Conn. App. 663, 670, 482 A.2d 91 (1984). "A hypothetical question may not be asked of an expert where it is so lacking in material, relevant and essential facts." *State* v. *Gaynor,* 182 Conn. 501, 509–10, 438 A.2d 749 (1980). " '[W]here the admissibility of evidence depends upon a preliminary question of fact, to be determined by the court, its decision is not to be reversed unless there is clear and manifest error.' *Engelke* v. *Wheatley,* [supra, 411]." *Spoto* v. *Hayward Mfg. Co.,* supra.

The plaintiff does not argue on appeal that there was any evidence of a cause of death other than contractile failure. She relies on § 323 (a) of the Restatement (Second) of Torts[7] and argues that once evidence has been introduced that a defendant's negligent act or omission increased the risk of harm to a person, and that harm was in fact sustained, it becomes a question for the jury as to whether that increased risk caused the harm. While this may be a proper interpretation of the Restatement, it does not apply to the facts of the present case because there was no evidence that the patient died from a condition which would have been detected by the use of the Swan-Ganz catheter. There was, therefore, no proof that the increased risk of harm of which the plaintiff complains, namely death due to hypovolemia, was in fact sustained.[8] Although

[7] Section 323 sets forth in pertinent part that "[o]ne who undertakes . . . to render services to another . . . is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm . . . ." Restatement (Second), Torts § 323.

[8] Those authorities cited by the plaintiff which impose liability for the deprivation of a "chance" for survival do not compel a different result than we have reached. See *Hicks* v. *United States,* 368 F.2d 626 (4th Cir. 1966); *James* v. *United States,* 483 F. Sup. 581 (N.D. Cal. 1980); *Evers* v. *Dollinger,* 95 N.J. 399, 471 A.2d 405 (1984); *Kallenberg* v. *Beth Israel Hospital,* 45 App. Div. 2d 177, 357 N.Y.S.2d 508 (1974); *Jones* v. *Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981); *Gradel* v. *Inouye,* 491 Pa. 534, 421 A.2d 674 (1980); *Hamil* v. *Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978);

there are uncertainties of proof inherent in some medical malpractice cases which may warrant some relaxation of the quantum of evidence required for the basis of a hypothetical question, there must be some evidence that the allegedly negligent conduct caused the plaintiff's injury. In this case, to allow the jury to find that the defendant's conduct increased the risk of the decedent's death would be to impose liability based on mere speculation and conjecture. See *Ardoline* v. *Keegan,* 140 Conn. 552, 558–59, 102 A.2d 352 (1954); *Campbell* v. *Pommier,* 5 Conn. App. 29, 32, 496 A.2d 975 (1985). The trial court's finding that there was insufficient evidence to support the proposed hypothetical question was not clearly and manifestly erroneous.

The plaintiff's second claim of error is related to her first claim. She argues that the trial court erroneously directed the verdict for the defendant for lack of evidence to prove causation. The plaintiff concedes that the only evidence as to causation was that portion of her expert's testimony which was disallowed by the court. Since we hold that the trial court's prohibition of this testimony was proper, we find that the direction of the defendant's verdict was also proper. See *Souper Spud, Inc.* v. *Aetna Casualty & Surety Co.,* 5 Conn. App. 579, 581–82, 501 A.2d 1214 (1985).

There is no error.

In this opinion the other judges concurred.

---

*Herskovits* v. *Group Health Cooperative,* 99 Wash. 2d 609, 664 P.2d 474 (1983); Restatement (Second), Torts § 323 (a). All of the plaintiff's authorities address themselves to situations where the cause in fact of the injury is known.