## REBECCA WALLACE, ADMINISTRATRIX (ESTATE OF GEORGE WALLACE) *v.* SAINT FRANCIS HOSPITAL AND MEDICAL CENTER (15468)

Lavery, Spear and Stoughton, Js.

Argued November 12, 1996—officially released February 11, 1997

*John F. Wynne, Jr.,* for the appellant (plaintiff).

*Louis B. Blumenfeld,* with whom, on the brief, were *Eugene A. Cooney* and *Sharone G. Kornman,* for the appellee (defendant).

LAVERY, J. The plaintiff appeals from the judgment rendered following the trial court's granting of the defendant's motion for a directed verdict in a medical malpractice action. We affirm the judgment of the trial court.

The plaintiff administratrix of the decedent's estate, in a one count amended complaint, alleged that the defendant Saint Francis Hospital and Medical Center negligently caused the plaintiff's decedent to lose his chance for successful treatment. At the close of the plaintiff's case, the trial court directed a verdict for the defendant because the plaintiff failed to prove that the defendant's conduct led or contributed to the decedent's death. The two issues that the plaintiff raises in this appeal are whether the trial court (1) improperly granted the defendant's motion for directed verdict when there was sufficient evidence to allow the case to go to the jury and (2) abused its discretion when it precluded the plaintiff's expert from testifying as to the causal connection between the defendant's alleged malpractice and the plaintiff's decedent's injury.

The record reflects the following facts. On July 7, 1990, at approximately 9:44 p.m., the plaintiff's decedent, George Wallace, arrived at the defendant's emergency room with complaints of stomach pain. Wallace

had been chronically ill for many years and was previously discharged from the defendant hospital on July 6, 1990, when he had undergone surgery for the removal of a Tenckhoff catheter.

When Wallace arrived at the emergency room on the night of July 7, 1990, he was assessed by a nurse, who noted that he had abnormal vital signs, and was put in an examining room so that a physician could examine him. At approximately 11:15 p.m., Wallace went into cardiac arrest and all efforts to resuscitate him failed. Wallace died from massive recent intraperitoneal hemorrhage at approximately 11:59 p.m.

An autopsy revealed that Wallace had a large quantity of blood in his abdomen at the time of his death. The autopsy, however, did not reveal the cause or origin of Wallace's internal bleeding.

To examine the plaintiff's first claim properly, we must initially address the plaintiff's second claim. The second claim addresses the exclusion of portions of the plaintiff's expert testimony. The exclusion of the expert testimony led to the entry of a directed verdict by the trial court, the subject of the first claim.

The plaintiff contends that the trial court improperly excluded the testimony of her expert witness, Jacek Franaszek, a physician, as to the causal connection between the defendant's malpractice and the decedent's injury. The plaintiff further argues that the exclusion of Franaszek's opinion on the probability of the decedent's survival in surgery led the trial court to direct the verdict for the defendant.

"The trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed. . . . In order to render an expert opinion

the witness must be qualified to do so and there must be a factual basis for the opinion. . . . Some facts must be shown as the foundation for an expert's opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence. . . . It is rare for this court to find that a trial court has erred in a ruling permitting expert testimony." (Citations omitted; internal quotation marks omitted.) *Madison Hills Ltd. Partnership II* v. *Madison Hills, Inc.*, 35 Conn. App. 81, 93, 644 A.2d 363, cert. denied, 231 Conn. 913, 648 A.2d 153 (1994).

At trial, Franaszek testified that the defendant hospital should have assessed and stabilized the patient more quickly so that he might have been admitted for surgery. The plaintiff then asked Franaszek the following question: "[B]ased upon reasonable medical probability, in your opinion, did these deviations from the standard of care cause Mr. Wallace's death?" The defendant objected to this question on two grounds. First, because Franaszek was not a surgeon, he was not qualified to render an opinion on the likelihood of a particular surgical outcome. Second, there was no evidence as to the cause or origin of the decedent's internal bleeding. The trial court subsequently excused the jury, allowed the plaintiff to make an offer of proof and then sustained the defendant's objections on both grounds. The trial court further instructed the plaintiff not to seek Franaszek's opinion on the likelihood that surgery would have saved the decedent.

We conclude that the trial court properly sustained the defendant's objection on the ground that Franaszek was not qualified to render opinions about a surgical outcome. "The determination of the qualification of an expert is largely a matter for the discretion of the trial court. *Oborski* v. *New Haven Gas Co.*, 151 Conn. 274, 280, 197 A.2d 73 (1964)." (Internal quotation marks omitted.) *Knock* v. *Knock*, 224 Conn. 776, 783, 621 A.2d

267 (1993). Furthermore, the question of a witness' competency to testify on technical matters is an issue to be determined by the trier by assessing the nature of the technicality involved and the proposed witness' level of expertise concerning these matters. *Varley* v. *Varley*, 189 Conn. 490, 501, 457 A.2d 1065 (1983). At trial, the defendant was permitted to voir dire Franaszek about his medical qualifications. From these questions the court learned that Franaszek was not a surgeon or a member of the American College of Surgeons, and had never practiced surgery. Therefore, it was within the trial court's discretion to rule, on the basis of the record in this case, that Franaszek was not a surgeon and thereby not qualified to render an expert opinion on a surgical outcome.[1]

We also conclude that the trial court did not abuse its discretion when it ruled that there was no foundation for Franaszek to render an expert opinion concerning the probable outcome of surgery. " 'In order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion.' *State* v. *Asherman*, 193 Conn. 695, 716, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985). Thus, '[t]he facts upon which an expert's opinion is based are an important consideration in determining the admissibility of his [or her] opinion.' *Going* v. *Pagani*, 172 Conn. 29, 34, 372 A.2d 516 (1976)." *Borkowski* v. *Borkowski*, 228 Conn. 729, 742, 638 A.2d 1060 (1994).

In the present case, the plaintiff offered no evidence as to the rate, cause or origin of the decedent's internal bleeding. Yet, the plaintiff wanted Franaszek to render his expert opinion as to whether the defendant's failure

---

[1] The plaintiff also suggests that General Statutes § 52-184c, which applies to the standard of care in a medical malpractice case, also applies to the causation element in the action. We disagree. General Statutes § 52-184c pertains only to the standard of care in medical malpractice cases, not causation.

to deliver the decedent to surgery led to his death. If Franaszek had been permitted to render an opinion on the question of a surgical outcome on the decedent, however, it would have been based not on fact but on speculation.

This court has long held that "[t]he facts assumed in a hypothetical question must have their basis in the evidence on the record. . . . Whether a proper foundation has been laid to support a hypothetical question is an issue of fact for the trial court. . . . A hypothetical question may not be asked of an expert where it is so lacking in material, relevant and essential facts. . . . [W]here the admissibility of evidence depends upon a preliminary question of fact, to be determined by the court, its decision is not to be reversed unless there is clear and manifest error." (Citations omitted; internal quotation marks omitted.) *Sochard* v. *St. Vincent's Medical Center*, 8 Conn. App. 6, 9–10, 510 A.2d 1367 (1986). Therefore, because no evidence was introduced concerning the source or cause of the decedent's internal bleeding, we conclude that it was within the trial court's discretion to conclude that there was not a substantial factual basis on which an expert opinion could be rendered.

In her next claim, the plaintiff contends that there was sufficient evidence presented by the plaintiff at trial to allow the case to go to the jury. The plaintiff argues that the defendant's failure to evaluate and treat the decedent caused him to lose a "chance for survival." "To prevail on this claim, a plaintiff must show (1) that he has in fact been deprived of a chance for successful treatment and (2) that the decreased chance for successful treatment more likely than not resulted from the defendant's negligence. *Gooding* v. *University Hospital Building, Inc.*, 445 So. 2d 1015, 1020 (Fla. 1984). ' "In other words, the plaintiff must show that what was done or failed to be done probably would have affected

the outcome." ' Id." *LaBieniec* v. *Baker*, 11 Conn. App. 199, 207, 526 A.2d 1341 (1987).

This court in *Borkowski* v. *Sacheti*, 43 Conn. App. 294, 682 A.2d 1095 (1996), recently addressed the causation analysis that must take place in a loss of chance case. In *Borkowski*, this court stated that of the many different theories of causation[2] that have been applied to loss of chance cases, Connecticut will continue to apply the traditional approach as articulated in *LaBieniec* v. *Baker*, supra, 11 Conn. App. 199. *Borkowski* v. *Sacheti*, supra, 311.

"[T]he *LaBieniec* court, further evincing its adoption of the traditional approach of reasonable medical probability, stated: The loss of a speculative chance of recovery alone is not an injury from which damages flow. We are convinced that the better rule to follow is the one which requires the plaintiff to prove that the defendants' negligence in all probability, proximately caused the injury. Only by such proof will the plaintiff have proven proximate cause. . . . After again stressing that the chain of causation, in establishing liability, is concerned only with reasonable probabilities and not possibilities . . . the *LaBieniec* court opined that [i]n this case, the evidence failed to remove the decreased chance of successful treatment theory from the realm of speculation. . . . *LaBieniec* then clearly stated that [s]ince there was no evidence which could have led the jury to a reasonable inference that the defendants' acts of malpractice were the direct and proximate cause of a decrease in the chance of successful treatment, it was proper for the trial court to direct a verdict on this issue." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 310–11.

---

[2] This court in *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 294, addressed three types of causation with regard to loss of chance cases: the relaxed causation approach, the proportional approach, and the traditional approach.

The plaintiff in the present case, as did the plaintiff in *LaBienic*, failed to produce sufficient evidence that the decedent had a better than even chance for survival if brought to surgery. At trial, Franaszek was asked by the plaintiff's counsel, "Do we know, with any certainty, whether surgery would have been successful on [the decedent]?" To this question, Franaszek replied, "No." The plaintiff's counsel then asked, "[H]e could have died in the operating room?" Franaszek replied, "Yes." Furthermore, the plaintiff did not offer any evidence pertaining to either the cause or source of the decedent's internal bleeding.

The jury was left without any evidence to show that the decedent would have had a better than even chance at survival if the defendant's employees had brought him to surgery. The plaintiff's contention that the decedent lost a chance of survival due to the defendant's alleged negligence is based on speculation and not on the reasonable probability that *LaBieniec* requires. We conclude that the trial court properly granted the defendant's motion for a directed verdict because the plaintiff offered no evidence that the defendant's alleged negligence was the proximate cause of the decedent's injury.

The judgment is affirmed.

In this opinion the other judges concurred.