MARK C. PETERSON, EXECUTOR (ESTATE OF CHRISTOPHER B. PETERSON), ET AL. *v.* OCEAN RADIOLOGY ASSO- CIATES, P.C., ET AL. (AC 28138)

Harper, Beach and Hennessy, Js.

Argued March 28—officially released July 22, 2008

*Eric W. Callahan*, for the appellants (plaintiffs).

*Frank H. Santoro*, with whom was *Donald E. Leone, Jr.*, for the appellees (defendants).

*Opinion*

BEACH, J. In this medical malpractice action, the plaintiffs, Mark C. Peterson and Todd B. Peterson, executors of the estate of Christopher B. Peterson (decedent), appeal from the summary judgment rendered by the trial court in favor of the defendants Ocean Radiology Associates, P.C. (Ocean Radiology), and Leonard A. Copertino, a radiologist employed by Ocean Radiology. On appeal, the plaintiffs claim that the court incorrectly categorized five of the six claims for relief in

their complaint as "loss of chance" claims and because of this incorrect categorization improperly granted the defendants' motion for summary judgment. We agree with the plaintiffs and, accordingly, reverse in part the judgment of the trial court.

A brief overview of the loss of chance doctrine at the outset is helpful. "In a loss of chance case, a tortfeasor, through his [negligent failure to act], causes an individual to lose a chance to avoid some form of physical harm from a preexisting medical condition." (Internal quotation marks omitted.) *Carrano* v. *Yale-New Haven Hospital*, 279 Conn. 622, 659 n.31, 904 A.2d 149 (2006). In such cases, the plaintiff must show that "if proper treatment had been given, better results would have followed." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 573, 864 A.2d 1 (2005). "In recent years, a number of states have [adopted] some version of the loss of chance doctrine. . . . Generally speaking, courts have adopted three approaches in addressing this doctrine: (1) the relaxed causation approach, (2) the proportional approach, and (3) the traditional approach."[1] *Borkowski* v. *Sacheti*, 43

[1] "[The] traditional approach for proving causation requires that a plaintiff prove that with proper medical treatment, the patient probably would have avoided the injury, harm or condition complained of. To put that approach in some context, a brief discussion of alternative approaches to proving causation in lost chance cases is provided as follows.

"The relaxed causation or substantial chance approach requires a plaintiff to prove that a substantial or significant chance of survival or better recovery was lost. If [the] plaintiff meets this initial threshold, the causation issue is submitted to the jury, using the tradition[al] proximate cause standard to ascertain whether, in fact, the alleged malpractice resulted in the loss of a substantial or significant chance. Thus, the jury must find by a preponderance of the evidence that the alleged negligence was the proximate cause of the lost chance, but the lost chance itself need only be a substantial or significant chance, for a better result, absent any malpractice, rather than a greater than 50 percent chance of a better result. . . .

"Under the proportional approach to causation in such cases, the loss of chance is viewed and redressed in its own right. . . . Instead of attempting to determine whether the physical harm was caused by negligence, a court could examine the extent of the victim's lost chances for cure or improve-

Conn. App. 294, 301–302, 682 A.2d 1095, cert. denied, 239 Conn. 945, 686 A.2d 120 (1996). "Connecticut recognizes a cause of action for lost chance . . . [and follows] a traditional approach in the determination of proximate cause." (Citations omitted.) *Poulin* v. *Yasner*, 64 Conn. App. 730, 744, 781 A.2d 422, cert. denied, 258 Conn. 911, 782 A.2d 1245 (2001).

"We employ loss of chance . . . to include 'decreased chance,' be it of successful treatment or survival itself." *Borkowski* v. *Sacheti*, supra, 43 Conn. App. 311 n.19. "To prevail on [a loss of chance] claim, a plaintiff must show (1) that he has in fact been deprived of a chance for successful treatment and (2) that the decreased chance for successful treatment more likely than not resulted from the defendant's negligence. . . . In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome." (Citation omitted; internal quotation marks omitted.) *LaBieniec* v. *Baker*, 11 Conn. App. 199, 207, 526 A.2d 1341 (1987). In order to satisfy the elements of a lost chance claim, the plaintiffs must first prove that had the standard of care been followed, there was a greater than 50 percent chance of avoiding the harm. See *Drew* v. *William W. Backus Hospital*, 77 Conn. App. 645, 653, 825 A.2d 810 ("[w]here a preexisting condition is involved, a loss of chance plaintiff, in order to meet the traditional standard of causation, must prove that the victim of the alleged negligence probably would have survived had he been treated properly" [internal quotation marks omitted]), cert. granted

ment and grant a recovery that mirrors the extent of those chances. . . . The relevant inquiry would be whether the defendant probably caused a reduction in the victim's chances. If causation were found, the court would provide compensation for the lost chance in direct proportion to the extent of the lost chance." (Citations omitted; internal quotation marks omitted.) *Drew* v. *William W. Backus Hospital*, 77 Conn. App. 645, 653 n.1, 825 A.2d 810, cert. granted on other grounds, 265 Conn. 909, 831 A.2d 249 (2003) (appeal withdrawn December 22, 2003).

on other grounds, 265 Conn. 909, 831 A.2d 249 (2003) (appeal withdrawn December 22, 2003); *Wallace* v. *St. Francis Hospital & Medical Center*, 44 Conn. App. 257, 262–64, 688 A.2d 352 (1997); see also J. Lagnese, C. Anderson & F. Santoro, Connecticut Medical Malpractice (2007) § 9-2:3.1, p. 67. The plaintiffs must then prove that the decreased chance for survival or successful treatment more likely than not resulted from the defendant's negligence. *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 573–74. "[I]t is not sufficient for a lost chance plaintiff to prove merely that a defendant's negligent conduct has deprived him or her of some chance; in Connecticut, such plaintiff must prove that the negligent conduct more likely than not affected the actual outcome." (Internal quotation marks omitted.) Id., 574.

The material facts underlying the plaintiffs' appeal are not in dispute. The plaintiffs filed a complaint dated January 12, 2004. The plaintiffs alleged, in part, that Copertino failed to note significant changes between the July, 2001, and October, 2001 chest X rays of the decedent. The plaintiffs alleged that Copertino failed to observe an increased density in the left hilum that was present in the October, 2001 chest X ray and which was absent from the July, 2001 chest X ray. It was not until March, 2002, that the decedent was diagnosed with extensive small cell lung carcinoma. The decedent died in July, 2002. Paragraph twenty-two of the complaint alleged that as a result of Copertino's negligence and carelessness while he was acting on behalf of Ocean Radiology, the decedent "[a] [s]uffered great pain and extreme mental anguish before his death; [b] [e]xperienced a significant and material decrease in his life expectancy; [c] [l]ost any opportunity and/or chance of achieving a favorable medical recovery from his disease; [d] [l]ost the opportunity to experience significant palliative benefit of available medical treatment; [e]

[e]xperienced more intrusive, invasive and medically, physically and emotionally disabling medical intervention to attempt to treat his disease; and [f] [l]ost the opportunity to enjoy and carry out all of life's activities, including the companionship of his spouse, children, and grandchildren, during his remaining living days."

On January 30, 2006, the defendants filed a motion for summary judgment on the ground that there was no genuine issue of material fact regarding "the plaintiff[s'] claim that the defendants' alleged negligence caused [the] decedent a loss of chance to survive or loss of chance for successful treatment." In their memorandum of law in support of the motion for summary judgment, the defendants asserted that the plaintiffs' claim for recovery relied solely on a theory of loss of chance or loss of opportunity for successful treatment. The defendants argued that the deposition testimony of the plaintiffs' expert, James R. Rigas, a thoracic oncologist, created no genuine issue of material fact and that, as a matter of law, the defendants' alleged negligence had not proximately caused the decedent to experience a lost chance of survival or opportunity for successful treatment. In essence, they argued that the plaintiffs could not prove, under the traditional approach adopted by Connecticut in loss of chance claims, that the decedent's chance of survival or successful treatment was greater than 50 percent even had appropriate treatment been provided and, accordingly, that they were entitled to judgment as a matter of law.

In their memorandum of law objecting to the defendants' motion for summary judgment, the plaintiffs argued that Connecticut should adopt the "substantial chance" approach to the loss of chance doctrine rather than adhering to the traditional approach.[2] Moreover, the plaintiffs asserted that the defendants' motion for

---

[2] See footnote 1 of this opinion.

summary judgment addressed only the claim for relief alleging loss of chance in paragraph 22 (c). They submitted that the court ought not address the remaining claims for relief in paragraph twenty-two. The plaintiffs argued that if the court granted the motion for summary judgment as to paragraph 22 (c), their remaining allegations of damage proximately caused by the defendants' negligence would survive the motion for summary judgment and would proceed to trial.

On August 22, 2006, the court granted the defendants' motion for summary judgment. The court explained that in attempting to establish the nonexistence of a genuine issue of material fact, the defendants submitted as evidence excerpts of the deposition testimony of Rigas, the plaintiffs' expert, who stated, inter alia, that in October, 2001, the date of the alleged misreading of the chest X ray, (1) the decedent had limited, small cell lung cancer, (2) the two year survival rate for patients diagnosed with limited stage, small cell lung cancer is 30 percent to 40 percent and survival rates decrease to 10 percent to 20 percent at five years, and (3) had the decedent been diagnosed in October, 2001, with limited, small cell lung cancer, it was less than 50 percent probable that he would have survived two years. The court, adhering to the traditional approach to the loss of chance doctrine that was adopted in *LaBieniec* v. *Baker*, supra, 11 Conn. App. 199, concluded that the plaintiffs had "failed to provide the necessary factual predicate to demonstrate the existence of a genuine issue of material fact as to the issue of the decedent's chance of survival or successful treatment of at least 51 percent."

The plaintiffs thereafter filed this appeal. After filing this appeal, the plaintiffs filed a motion for articulation, asking the court to specify whether it rendered summary judgment as to their entire complaint or only as to the portion of the complaint that they classify as a

lost chance claim, namely, paragraph 22 (c). On May 9, 2007, the court clarified that in granting the defendants' motion for summary judgment, it intended to dispose of the entire complaint.

On appeal, the plaintiffs do not contest the portion of the court's decision rendering summary judgment as to paragraph 22 (c). The plaintiffs rather claim that the court improperly granted the defendants' motion for summary judgment as to the five remaining claims in paragraph twenty-two. Specifically, they argue that the defendants' motion for summary judgment addressed only the loss of chance claim in paragraph 22 (c) but did not address the remaining claims in that paragraph. The plaintiffs contend that the court improperly characterized the five remaining claims in paragraph twenty-two as "loss of chance" claims and, thereafter, improperly granted the defendants' motion for summary judgment as to those claims. We agree that the court improperly rendered summary judgment as to the sections of paragraph twenty-two at issue in this appeal.

The standard of review of a trial court's decision to grant a motion for summary judgment is well established. "[T]he scope of our review of the granting of a motion for summary judgment is plenary. . . . In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In ruling on a motion for summary judgment, it is customary for the court to review documentary proof submitted by the parties to demonstrate the existence or nonexistence of issues of material fact. Practice Book § 17-45." (Citation omitted; internal quotation marks

omitted.) *Drew* v. *William W. Backus Hospital*, supra, 77 Conn. App. 650.

The plaintiffs' claim requires us to interpret their complaint. "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . [T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 559–60.

The plaintiffs' complaint alleged that Copertino was negligent and careless in the manner in which he reviewed, interpreted, read or reported the results of the October, 2001 chest X ray. The complaint further alleged that as a result of this negligence and carelessness, Copertino, acting on behalf of Ocean Radiology, caused the decedent the injuries set forth in paragraph twenty-two. Sections (a), (b), (d), (e) and (f) of paragraph twenty-two of the complaint alleged, respectively, that the defendants' negligence directly caused the decedent to suffer pain and mental anguish, to experience a decrease in life expectancy, to fail to experience the palliative benefit of medical treatment, to experience more physically and emotionally disabling medical intervention and to lose enjoyment of life's activities. Prefacing the plaintiffs' claims in these sections of paragraph twenty-two is the assertion that

the defendants' alleged failure to diagnose the decedent's lung cancer in October, 2001, proximately caused these damages to the decedent. Therefore, to be entitled to damages, the plaintiffs must establish on the basis of reasonable medical probability the necessary causal relation between the failure of the defendants to diagnose the lung cancer and the injuries that the plaintiffs claimed the decedent suffered. See *LaBieniec* v. *Baker*, supra, 11 Conn. App. 203.[3] "If a plaintiff is proximately harmed by a delay in a definitive diagnosis, a physician may be held liable." Id.

In their motion for summary judgment, the defendants referred to one undisputed fact, namely, Rigas' testimony that the decedent had a less than 50 percent chance of survival even if the standard of care had been followed. This undisputed fact does not preclude the plaintiffs from establishing on the basis of reasonable medical probability that the failure of the defendants to diagnose the lung cancer in October, 2001, proximately caused the decedent to suffer the injuries set forth in sections (a), (b), (d), (e) and (f) of paragraph twenty-two.[4] Rigas' testimony, as submitted in connection with the defendants' motion for summary judgment, did not

[3] "Medical malpractice actions involving diagnosis of cancer differ from other malpractice actions only factually. The legal analysis and elements remain the same. There are four essential elements to a malpractice action. They are: (1) the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant must have failed to measure up to that standard; (3) the plaintiff must suffer actual injury; and (4) the defendant's conduct must be the cause of the plaintiff's injury." *LaBieniec* v. *Baker*, supra, 11 Conn. App. 202–203.

[4] "The traditional standard of the sufficiency of the evidence for submitting a medical malpractice case to the jury has required a plaintiff to adduce evidence of a reasonable medical probability that his injuries were proximately caused by the negligence of one or more of the defendants. This meant demonstrating that it is more likely than not that the injury, harm or condition claimed to have resulted from that negligence, was a substantial factor in causing the injury, harm or condition and without which that injury, harm or condition would not have occurred." (Internal quotation marks omitted.) *Drew* v. *William W. Backus Hospital*, supra, 77 Conn. App. 652–53.

establish that the defendants were entitled to judgment as a matter of law as to these sections of paragraph twenty-two. His testimony did not establish the lack of a genuine issue of material fact as to proximate causation with respect to these allegations.

In paragraph 22 (a), the plaintiffs alleged that as a result of the defendants' negligence, the decedent suffered great pain and extreme mental anguish. In order to prove causation with respect to this allegation, the plaintiffs would need to show that the defendants' alleged negligence in failing to diagnose lung cancer in October, 2001, more likely than not caused the decedent to suffer great pain and extreme mental anguish. Rigas' testimony that the plaintiffs' decedent had a less than 50 percent chance of survival did not necessarily affect the causation element as to pain and suffering while the decedent lived.

In paragraphs 22 (d) and (e), respectively, the plaintiffs alleged that as a result of the defendants' negligence, the decedent failed to experience the palliative benefit of available medical treatment and experienced a more physically and emotionally disabling medical intervention. These claims are similar to the claim in paragraph 22 (a) in that they, in essence, are based on physical or emotional pain allegedly suffered as a result of the defendants' negligence. To prove causation with respect to this claim, the plaintiffs would have to show that the defendants' alleged negligence more likely than not caused the decedent to fail to experience the palliative benefit of available medical treatment and caused him to experience a more physically and emotionally disabling medical intervention. Again, Rigas' testimony regarding the chance of survival of the decedent did not foreclose the issue.

To prove causation with respect to paragraph 22 (b), which alleged that the decedent experienced a decrease

in life expectancy as a result of the defendants' negligence, the plaintiffs would need to show that the defendants' alleged negligence caused a decrease in life expectancy. Whether the decedent had a less than 50 percent chance of survival in general did not precisely and necessarily establish the lack of a genuine issue of material fact as to proximate causation of a relatively minor decrease in life expectancy. Last, in paragraph 22 (f), the plaintiffs alleged loss of enjoyment of life. Regardless of Rigas' testimony concerning the chances of survival of the decedent, the plaintiffs perhaps could still prove proximate causation with respect to this allegation.[5]

"On a motion by the defendant for summary judgment the burden is on [the] defendant to negate each claim as framed by the complaint." (Internal quotation marks omitted.) *Baldwin* v. *Curtis*, 105 Conn. App. 844, 851, 939 A.2d 1249 (2008). The defendants have not met their burden in this case.[6] Accordingly, we conclude that the

---

[5] The resolution of paragraphs 22 (b) and (f) presents a close question. The plaintiffs alleged, respectively, in these sections that as a result of the defendants' negligence, the decedent experienced a decrease in life expectancy and a loss of enjoyment of life. The nature of these claims suggests that a "lost chance" approach may be warranted. The "lost chance" approach is, after all, nothing more than traditional proximate causation tailored to a situation in which the defendants' conduct did not directly cause harm. See, e.g., *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 573 n.12 (lost chance claim "is predicated on the defendant's alleged acts of omission rather than commission" [internal quotation marks omitted]). In the present case, however, summary judgment was not proper because the defendants have not established the lack of a genuine issue of material fact as to the issue of proximate causation with respect to the allegations in these sections of paragraph twenty-two.

[6] Because the defendants have not met their burden, the plaintiffs need not show that genuine issues of material facts exist. See *Baldwin* v. *Curtis*, supra, 105 Conn. App. 851 ("[i]t is only [o]nce [the] defendant's burden in establishing his entitlement to summary judgment is met [that] the burden shifts to [the] plaintiff to show that a genuine issue of fact exists justifying a trial" [internal quotation marks omitted]). Nevertheless, the plaintiffs attached portions of Rigas' deposition testimony to their opposition to the summary judgment motion that placed material facts in dispute as to sections (a), (b), (d), (e) and (f) of paragraph twenty-two. Specifically, Rigas testified

court improperly rendered summary judgment as to the entire complaint. The negligence claims set forth in sections (a), (b), (d), (e) and (f) of paragraph twenty-two remain viable.

The judgment is reversed with respect to all subparagraphs of paragraph 22 except subparagraph 22 (c), and the case is remanded for further proceedings. The judgment is affirmed with respect to subparagraph 22 (c).

In this opinion the other judges concurred.

that had the decedent been diagnosed in October, 2001, and treatment implemented, then it was more than 50 percent probable that he would have experienced a better outcome in that he would have lived longer, the quality of his life would have improved and he would have suffered less pain. Rigas also testified that in October, 2001, the decedent's cancer was potentially curable, but in March, 2002, when he finally was diagnosed, his cancer was incurable.