ALBERT WARD, ADMINISTRATOR (ESTATE OF ELBART WARD) *v.* WILLIAM RAMSEY ET AL.
(AC 34905)

DiPentima, C. J., and Sheldon and Bishop, Js.

Argued June 3—officially released October 29, 2013

*Ikechukwu Umeugo*, for the appellant (plaintiff).

*David J. Robertson*, with whom were *Heidi M. Cilano* and, on the brief, *Azadeh Rezvani*, for the appellees (defendants).

*Opinion*

SHELDON, J. In this medical malpractice action, the plaintiff, Albert Ward, administrator of the estate of Elbart Ward (decedent), appeals from the summary judgment rendered in favor of the defendants, William Ramsey, a physician, and Connecticut Gastroenterology Consultants, P.C., on the basis of the trial court's earlier preclusion of the testimony of his expert witness, a

board certified gastroenterologist, that the defendants' professional negligence proximately caused the death of the decedent.[1] We conclude that the trial court improperly precluded the plaintiff's proffered causation testimony, and thus reverse the judgment of the court.

On April 15, 2009, the plaintiff commenced this action against the defendants, alleging negligence in the care and treatment of the decedent. By way of an amended complaint dated July 24, 2009, the plaintiff alleged that on July 27, 2007, while the decedent was a patient at the Hospital of Saint Raphael in New Haven, Ramsey, a board certified gastroenterologist, treated the decedent for dysphagia by the insertion of a percutaneous endoscopic gastrostomy (PEG) feeding tube that perforated the decedent's small intestine or bowel.[2] The plaintiff alleged that, following this procedure, Ramsey failed to monitor the decedent, and thus failed to recognize that the decedent was exhibiting signs and symptoms of a perforated bowel, including severe abdominal pain and a distended abdomen. The plaintiff further alleged that, because of Ramsey's failure to monitor the decedent postoperatively and his consequent failure to recognize the complications arising from the insertion of the PEG feeding tube, Ramsey failed to obtain a timely surgical consultation, and thereby caused delay in further treatment, as a result of which the decedent developed sepsis, suffered multiorgan failure and, ultimately, died on August 13, 2007.

On December 2, 2009, the plaintiff disclosed William M. Bisordi, a board certified gastroenterologist, as an

---

[1] The plaintiff also claims that the court erred in denying his motion to preclude the testimony of the defendants' expert witness. Because we reverse the judgment on other grounds, we decline to address this claim.

[2] Perforation of the bowel is a known risk associated with the insertion of a PEG feeding tube and the plaintiff does not allege that the perforation of the bowel of the plaintiff's decedent was the result of negligent conduct by Ramsey.

expert witness who would testify at trial as to the defendants' deviation from the standard of care and causation. On December 11, 2009, the plaintiff filed a revised disclosure of Bisordi. The defendants deposed Bisordi on June 2, 2011. At his deposition, Bisordi opined, inter alia, that, following the insertion of the PEG feeding tube, Ramsey failed to recognize a complication arising from it, specifically a perforation of the bowel, and that this failure to recognize the perforation ultimately caused the decedent's death. Bisordi testified that if Ramsey had examined the decedent within a couple of hours after the procedure, that complication would have been realized, and "then the window [of] opportunity to treat that complication would have allowed the patient to be treated and not subsequently develop peritonitis, multiorgan failure, sepsis and death."

On June 14, 2012,[3] the defendants filed a motion in limine seeking to preclude Bisordi from testifying on the issue of causation on the ground that he was not qualified to testify on that subject in this case because only a surgeon could competently testify as to the decedent's likely "surgical outcome," and he is a gastroenterologist, not a surgeon. On June 26, 2012, the trial court held a hearing on various motions in limine filed by the parties. Following argument by counsel, the court granted the defendants' motion in limine to preclude Bisordi from testifying as to causation and issued a written order stating: "The plaintiff has provided no evidence that Dr. Bisordi is qualified to testify as to proximate cause, which, under the facts of this case, requires the expert testimony of a surgeon." The defendants thereafter moved for summary judgment on the ground that the plaintiff could not make out a prima facie case because he did not have an expert witness

---

[3] We note that Bisordi's qualifications, as set forth in both December, 2009 disclosures, never changed, but the defendants did not seek to preclude his testimony until two and one-half years later, on the eve of trial.

to testify as to proximate causation of the decedent's death. The court agreed with the defendants, and thus granted their motion for summary judgment. This appeal followed.

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012).

Although our review of the trial court's decision to grant the defendants' motion for summary judgment is plenary, that decision was based upon the court's prior evidentiary ruling precluding Bisordi's causation testimony, which the plaintiff challenges on appeal. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law. . . . Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the

average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . It is well settled that [t]he true test of the admissibility of [expert] testimony is not whether the subject matter is common or uncommon, or whether many persons or few have some knowledge of the matter; but it is whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience [of] any aid to the court or the jury in determining the questions at issue. . . . Implicit in this standard is the requirement . . . that the expert's knowledge or experience must be directly applicable to the matter specifically in issue." (Internal quotation marks omitted.) *Milton* v. *Robinson*, 131 Conn. App. 760, 772–73, 27 A.3d 480 (2011), cert. denied, 304 Conn. 906, 39 A.3d 1118 (2012).

With that standard of review in mind, we turn to the legal principles pertaining to medical malpractice cases. "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, the plaintiff must present expert testimony in support of a medical malpractice claim because the requirements for proper medical diagnosis and treatment are not within the common knowledge of laypersons. . . . All medical malpractice claims, whether involving acts or inactions of a defendant physician, require that a defendant physician's conduct proximately cause the plaintiff's injuries. The question is whether the conduct of the defendant was a substantial factor in causing the plaintiff's injury. . . . This causal connection must rest upon more than surmise or conjecture. . . . A trier is not concerned with possibilities but with reasonable probabilities. . . . The causal relation between an injury and its

later physical effects may be established by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question. . . .

"To be reasonably probable, a conclusion must be more likely than not. . . . Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony. . . . An expert . . . need not use talismanic words to show reasonable probability." (Citations omitted; internal quotation marks omitted.) *Sargis* v. *Donahue*, 142 Conn. App. 505, 512–13, 65 A.3d 20 (2013). There are no precise facts that must be proved before an expert's opinion may be received in evidence. See *Waldron* v. *Raccio*, 166 Conn. 608, 614, 353 A.2d 770 (1974).

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . As [our Supreme Court] observed . . . [l]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause, which [our Supreme Court has] defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The proximate cause requirement tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . [T]he test of proximate cause is whether the defendant's conduct

is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection." (Internal quotation marks omitted.) *Phelps* v. *Lankes*, 74 Conn. App. 597, 601–602, 813 A.2d 100 (2003).

In other words, "[p]roximate cause [is] defined as an actual cause that is a substantial factor in the resulting harm . . . . [T]he inquiry fundamental to all proximate cause questions . . . [is] whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence. . . . Additionally, we note that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person *and* is not within the scope of the risk created by the defendant's conduct." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 124, 869 A.2d 179 (2005).

The plaintiff claims on appeal that the trial court improperly precluded Bisordi's testimony as to causation on the ground that Bisordi is not qualified to testify as to causation in this case because he is not a surgeon. Although the court did not issue a detailed memorandum of decision setting forth the factual and legal bases for its preclusion of Bisordi's causation testimony, a review of the transcript of the hearing on the defendants' motion to preclude is helpful in ascertaining its rationale. During that hearing, the court posited: "I don't think that he's able to testify as to proximate cause, that has to come from a surgeon. Here's the ramifications of the untimely failure to diagnose. Dr. Bisordi can't testify to that because he just doesn't know, quite frankly,

that's beyond the realm of his expertise. He gets you through the procedure into [p]ostprocedure monitoring and what the obligations of Dr. Ramsey would be, to turn it over to a surgeon in a consultation. But, then, when you get to that point, that's where his expertise ends. He can testify in general terms that sepsis may lead to death, but, you—you're missing all of the key components in there about what the delay meant for the chances of recovery here. . . . That whole part is missing." The court also inquired: "Don't you need to have a surgeon to say, look, if it had been done on the day that it should have been discovered, [the decedent's] outcome would have been 90 percent. Waiting five hours, it was 85 percent. Waiting a day it was 50 percent. Waiting two days it was 20 percent. Waiting three days, he had no chance of survival. Don't you need to have a surgeon testify to that in order to establish your wrongful death action?" The court insisted that the plaintiff needed an expert to testify as to "whether surgery was warranted, when it was warranted, what its results would have been, whether it would have changed the course of events for the decedent, what the chance of survival would have been. These are all things that a surgeon would be able to answer, particularly with comorbidity as has been indicated here . . . ."

Finally, the court concluded that, with Bisordi's testimony, "[y]ou get right up to the ordering the [surgical] consult, and, then, from that point forward, you need an expert to say here's what would have happened if Dr. Ramsey had done his job that day, I would have immediately ordered these diagnostic tests, I would have then seen the amount of air in the cavity. I would have then immediately ordered surgery, sent him to the [operating room], and I would have done this particular procedure. And he would have had, based on his comorbidity, had this rate of survival, and I would have saved

his life. That's the expert that you need and that is missing from your case, and this, unfortunately, [is] critical to your case. Not, I'm a gastroenterologist, and you nick the bowel, bad stuff's going to come out and the patient's going to die. . . . That doesn't get proximate cause in this particular case. . . . You need to have that surgical expert who can, without speculation, testify, within reasonable medical probability, this is what I would have done, this is what I would have seen, this is what I would have done, and this is the reasonable outcome to be expected here, that this gentleman wouldn't have died if I had done the surgery in this fashion, within this time frame. That's how you get to the jury. You're missing that whole part of it."[4]

The court's rationale was further elucidated in its subsequent memorandum of decision granting the defendants' motion for summary judgment, in which it characterized its earlier ruling precluding Bisordi's testimony on causation as follows: "The court previously ruled that a surgeon must render the opinion that a surgical consult and more immediate surgery would have changed the course of events." The court further explained: "The plaintiff's expert must testify that Dr. Ramsey's conduct, or lack thereof, caused the decedent to suffer injury and death. In other words, the plaintiff must establish, not just that the complication which resulted from the PEG feeding tube led to the [decedent's] demise, but that Dr. Ramsey's failure to follow up with the [decedent] and call for a surgical consult in the hours following the procedure led to

---

[4] At that hearing, the court posited that even if Ramsey was negligent, "the result would have been the same, the untimely demise of the decedent, because somebody down the chain didn't do what they were supposed to do, regardless of whether . . . Ramsey did what he was supposed to do." In so stating, it appears that the court may have assumed that the intervening negligence of the surgeons, in waiting to operate on the decedent, may have relieved Ramsey of liability. As noted herein, such an assumption is contrary to our law. See *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 124.

the [decedent's] demise. For instance, expert testimony would be required as to the issue of what surgical options were available, when such options were viable, and whether they were foreclosed by lost opportunity caused by Dr. Ramsey."

In so reasoning, the trial court adopted the defendants' argument that, as a matter of law, this case was a "surgical outcome case," which required a surgical expert's testimony as to causation. We disagree. Although our legislature has set forth specific requirements for an expert who is offered to testify as to standard of care, it has not done so with causation testimony.[5] As this court has noted, General Statutes § 52-184c pertains only to the standard of care in medical malpractice cases, not causation. *Wallace* v. *St. Francis Hospital & Medical Center*, 44 Conn. App. 257, 261 n.1, 688 A.2d 352 (1997). There is no law that sets forth specific requirements as to the qualifications of experts who testify as to causation in a medical malpractice case. Rather, "[m]edical specialties overlap, and it is within a court's discretion to consider that fact in exercising its discretion to deem the witness qualified to testify. It is not the artificial classification of a witness by title that governs the admissibility of the testimony, but the scope of the [witness'] knowledge of the particular condition." *Marshall* v. *Hartford Hospital*, 65 Conn. App. 738, 758, 783 A.2d 1085, cert. denied, 258 Conn. 938, 786 A.2d 425 (2001).[6]

---

[5] By the defendants' reasoning, anytime a patient must undergo a remedial course of treatment or procedure, causation must be proven, as a matter of law, via testimony of a medical expert of the same specialty as the health care provider who is administering the remedial measures. That argument finds no support in our law.

[6] We note that the plaintiff filed a motion to preclude the testimony of the defendants' expert, a surgeon, as to the standard of care of a gastroenterologist. In opposition to that motion, the defendants argued that, although their expert does not perform the procedure of inserting PEG feeding tubes, he does perform other surgical procedures and thus, based upon his experience, has knowledge of the standard of care regarding postoperative care. At the hearing on the motion to preclude, the defendants ironically argued,

In support of the preclusion of Bisordi's testimony, the defendants rely upon this court's decision in *Wallace v. St. Francis Hospital & Medical Center*, supra, 44 Conn. App. 257. In *Wallace*, the plaintiff administrator of the estate of a patient who died of internal bleeding alleged that the defendant hospital's failure to diagnose the patient and to perform surgery had caused the patient to lose his chance of survival. The trial court directed a verdict in favor of the defendant after determining that the plaintiff had failed to prove that the defendant's conduct had led or contributed to the decedent's death. Id., 258. Although this court determined that it was within the trial court's discretion to rule that the plaintiff's proffered expert was not a surgeon, and was therefore not qualified to render an expert opinion on surgical outcome; id., 261; we further noted that "the plaintiff offered no evidence as to the rate, cause or origin of the decedent's internal bleeding. Yet, the plaintiff wanted [her expert] to render his expert opinion as to whether the defendant's failure to deliver the decedent to surgery led to his death. If [her expert] had been permitted to render an opinion on the question of a surgical outcome on the decedent, however, it would have been based not on fact but on speculation. . . . [B]*ecause no evidence was introduced concerning the source or cause of the decedent's internal bleeding*, we conclude that it was within the trial court's discretion to conclude that there was not a substantial factual basis on which an expert opinion could be rendered." (Emphasis added.) Id., 261–62.

We agree with the plaintiff that *Wallace* is distinguishable from the case at hand. In *Wallace*, although this court noted that the proffered expert was not a surgeon, and thus could not testify as to surgical outcome, we

inter alia: "I believe that it's an overlapping specialty, these are one of those areas in which he should be permitted to testify because of the overlapping sort of specialty and the fact that he is a surgeon."

emphasized the fact that there was no evidence upon which the expert could base his opinion. The primary and dispositive distinction between the present case and *Wallace* is that, in *Wallace*, no evidence was presented as to the source or cause of the decedent's internal bleeding and, without that evidence, any opinion as to the cause of death would necessarily have been speculative. Here, by contrast, it is undisputed that Ramsey perforated the decedent's bowel when inserting the PEG feeding tube and that, as a result of that perforation, the decedent developed sepsis and died.

Bisordi's proffered testimony on causation was based upon his training, education, practice, and experience. As a board certified gastroenterologist, he knows that perforation of the bowel is a common complication of insertion of a PEG feeding tube; he knows that the greatest risks of bowel perforation are sepsis and death; he knows that, in the event of a bowel perforation, the proper course of treatment is to close the perforation by surgical means to stop the leaching of poisons into the patient's system; he knows that timely surgical intervention to repair a perforated bowel is essential to a favorable outcome for the patient; he thus knows, is able to recognize, and is trained to carefully monitor his patients for the signs and symptoms of bowel perforation to ensure timely diagnosis of bowel perforation and appropriate surgical intervention. The plaintiff claims that Bisordi is "qualified to render an opinion regarding the necessity to close a hole that has been created by the gastroenterologist, and that without closing the perforation, the toxins and bacteria would continue to seep into the abdominal cavity and infect the patient's systems. As a [board certified] gastroenterologist, Dr. Bisordi is familiar with the prognosis of patients who have a perforated bowel diagnosed and repaired in a timely fashion as opposed to patients whose diagnosis and repair is delayed." We agree.

On the basis of that knowledge and experience as a board certified gastroenterologist, upon which he relied in reviewing the decedent's medical records and autopsy report, Bisordi opined, with a reasonable degree of medical probability, that Ramsey's negligence in failing to monitor the decedent adequately and to obtain a timely surgical consult resulted in a delay that ultimately led to the decedent's death. The harm suffered by the decedent, sepsis and death, are unquestionably of the same general nature as the foreseeable risk created by Ramsey's alleged negligence. See *Monk* v. *Temple George Associates, LLC*, supra, 273 Conn. 124. Although this is not a case where the facts would require a jury to find that the defendants' acts were the sole proximate cause of decedent's death, it is also not a case where the defendants' actions "were so far removed from the actual occurrence producing the injury that they become mere incidents of the operating cause." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, supra, 306 Conn. 558.

On the basis of the foregoing, we conclude that the trial court abused its discretion by precluding Bisordi from testifying on the issue of causation on the ground that he is not a surgeon. Instead of treating his lack of that credential as dispositive, the court should have examined the full range of Bisordi's professional familiarity with the cause of, proper treatment for and likely prognosis of patients timely diagnosed with perforated bowels to determine if he was competent to offer expert testimony that the defendants' failure to monitor the decedent for the signs and symptoms of that dangerous complication proximately caused his sepsis and resulting death. Had it done so on the basis of the record before it, where undisputed evidence of Bisordi's professional familiarity with these matters as a board certified gastroenterologist was substantial, the court

should have denied the defendants' motion to preclude, and, accordingly, their subsequent motion for summary judgment in ruling that only a surgeon would be qualified to testify as to causation in this case. In so doing, the court erred in concluding that Bisordi was not qualified to testify as to causation, and thus improperly granted the defendants' motion to preclude Bisordi's causation testimony. We further conclude that the court's summary judgment in favor of the defendants, rendered on the basis of that erroneous evidentiary ruling, was also improper.

The judgment is reversed and the case is remanded with direction to deny the defendants' motions to preclude the plaintiff's expert testimony and for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.