******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KENNETH BARNES *v.* CONNECTICUT PODIATRY
GROUP, P.C., ET AL.
(AC 39564)

Alvord, Moll and Beach, Js.

*Syllabus*

The plaintiff K sought to recover damages from the defendants for medical
malpractice in connection with the alleged failure of the defendant D,
a podiatrist, to rule out the possibility of impaired blood flow to K's
feet and to refer K to a vascular specialist, resulting, inter alia, in the
partial amputations of K's feet. K filed an expert witness disclosure
identifying G as an expert on the standard of care and causation, and
later filed an amended expert witness disclosure. The defendants filed
a motion to preclude the amended expert witness disclosure, which the
court denied without prejudice, but also ordered, on January 13, 2016,
that K was precluded from disclosing additional experts. After the court
denied K's motion for reargument and reconsideration of that order, K
filed a motion to modify the court's scheduling order dated January 19,
2016, and filed an expert witness disclosure identifying R as an additional
expert. The court sustained the defendants' objections thereto and
granted their motion to preclude R's testimony, stating that it was adher-
ing to its January 13, 2016 order. The court subsequently precluded G
from offering expert testimony and rendered summary judgment in favor
of the defendants, from which K appealed to this court. Thereafter, S,
the administratrix of K's estate, was substituted as the plaintiff. *Held:*

1. The trial court did not err in ordering that K could not disclose addi-
tional experts:
    a. S could not prevail on her claim that the trial court's January 13, 2016
    order constituted a sanction of preclusion subject to the applicable rule
    of practice (§ 13-4 [h]), which establishes procedures for the disclosures
    and depositions of experts in civil matters: the order was a case manage-
    ment decision that the court had the inherent authority to enter, as the
    court had expressed concern during argument on January 13, 2016,
    concerning a representation made by K's counsel that he might seek to
    disclose additional experts, because at that time, the trial in this action,
    which had been pending since 2012, was scheduled to begin on January
    19, 2016, and nothing in the record indicated that the court entered the
    order as a result of a violation by K of any of the provisions of § 13-4;
    moreover, notwithstanding that the defendants did not request such an
    order and that S claimed that good cause existed to allow K to disclose
    additional experts, it was within the court's broad discretion, exercised
    pursuant to its authority to manage its docket, to preclude K from
    disclosing additional experts, particularly where the parties were on the
    eve of trial, which had been rescheduled, and where the date by which
    K had to disclose his experts had passed.
    b. The trial court did not err in adhering to the January 13, 2016 order;
    that court determined that it would not hear reargument on the January
    13, 2016 order because a different judge had entered the order and had
    subsequently denied K's motion for reargument and for reconsideration,
    there was no basis for S's contention that the court improperly relied on
    the law of the case doctrine, and S did not present any other cognizable
    argument challenging the court's decision.

2. The trial court did not err in precluding G from offering expert opinions
as to the standard of care and causation: that court reasonably deter-
mined that there was an inadequate factual basis to conclude that G
knew the prevailing professional standard of care applicable to D in
Connecticut in 2011, when the defendants' alleged professional negli-
gence occurred, because G's knowledge of that standard of care was
scant and there was no foundation for G to aver that the podiatric
standard of care in Connecticut was the same as the standard of care
in Pennsylvania, where G was licensed and had practiced exclusively;
moreover, G averred that he did not know whether the partial amputa-
tions of K's feet could have been prevented and that a vascular surgeon
was needed to opine as to whether the amputations could have been

avoided but for the defendants' alleged breach of the standard of care, and S did not cite any part of the record that would have undermined the court's determination that G could not testify that the defendants' breach of the standard of care led to K's injuries.

3. S could not prevail on her claim that the trial court erred in rendering summary judgment in favor of the defendants; that court properly precluded K from disclosing additional experts and G from offering standard of care and causation opinions, and, as a result, K was unable to produce expert testimony establishing the applicable standard of care, a breach of that standard and causation, and he, therefore, could not establish a prima facie case of medical malpractice.

Argued October 8, 2019—officially released January 14, 2020

*Procedural History*

Action seeking damages for the defendants' medical malpractice, brought to the Superior Court in the judicial district of New Haven, where the court, *A. Robinson, J.*, precluded certain expert testimony; thereafter, the court, *Lager, J.*, granted the motion for summary judgment filed by the defendants and rendered judgment thereon, from which the named plaintiff appealed to this court; subsequently, this court granted the motion to substitute Sherry West Barnes, the administratrix of the estate of the named plaintiff, as the plaintiff. *Affirmed.*

*Joseph R. Mirrione*, for the appellant (substitute plaintiff).

*Ellen M. Costello*, for the appellees (defendants).

*Opinion*

MOLL, J. In this medical malpractice action, the substitute plaintiff, Sherry West Barnes, administratrix of the estate of Kenneth Barnes (administratrix),[1] appeals from the summary judgment rendered by the trial court in favor of the defendants, Connecticut Podiatry Group, P.C., and Marc Daddio, a doctor of podiatric medicine. On appeal, the administratrix claims that (1) the court, *A. Robinson, J.*, erred in precluding Barnes from disclosing additional experts, and (2) the court, *Lager, J.*, erred in (a) adhering to Judge Robinson's order precluding Barnes from disclosing additional experts, (b) precluding the expert opinions of Barnes' disclosed expert, and (c) rendering summary judgment in favor of the defendants. We disagree and, accordingly, affirm the summary judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On February 29, 2012, Barnes commenced this medical malpractice action against the defendants. In a revised two count complaint filed on April 17, 2012, Barnes alleged that, while he was a patient of the defendants in 2011, the defendants deviated from the applicable standard of podiatric care by failing to suspect and rule out the possibility of an impairment in the blood flow to Barnes' feet and by failing to refer Barnes to a vascular specialist, resulting, inter alia, in the partial amputations of Barnes' feet. On April 26, 2012, the defendants answered the revised complaint, denying the material allegations therein.

On May 3, 2012, Barnes filed an expert witness disclosure identifying Jack B. Gorman, a podiatrist practicing in Pennsylvania, as his expert on the standard of care and causation. The disclosure indicated that Dr. Gorman was expected to testify that the defendants deviated from the applicable standard of care by failing to suspect and rule out the possibility of "vascular compromise" and make an appropriate and timely referral to a vascular specialist. In addition, per the disclosure, Dr. Gorman was expected to testify that the defendants' deviation from the applicable standard of care resulted in the partial amputations of Barnes' feet.

On June 25, 2013, the trial court, *A. Robinson, J.*, approved a scheduling order, inter alia, setting September 1, 2013, as the deadline by which Barnes had to disclose all of his experts. The next day, a JDNO notice was issued providing that a jury trial was scheduled to begin on September 15, 2014. Barnes did not disclose any additional experts on or before September 1, 2013.

On March 12, 2014, the defendants filed a motion to preclude the expert testimony of Dr. Gorman on the basis that, despite their multiple attempts to depose him, Dr. Gorman refused to attend a deposition without a prepayment of his fees. On April 7, 2014, Judge Rob-

inson issued an order declining to preclude Dr. Gorman's expert testimony, but requiring the parties to select a date, no later than May 14, 2014, on which to conduct Dr. Gorman's deposition, for which the defendants were not required to remit a prepayment. Notwithstanding the court's order, Dr. Gorman was not deposed on or before May 14, 2014.

On September 12, 2014, three days before the start of trial, Terence S. Hawkins, Barnes' prior counsel, filed a motion for a continuance of the trial, representing that Hawkins was scheduled to undergo an emergency medical procedure on September 15, 2014. The same day, Judge Robinson granted the motion and scheduled a status conference for October 15, 2014. On October 14, 2014, Hawkins filed a motion for a continuance of the status conference, representing that he was closing his legal practice on October 31, 2014.[2] The same day, Judge Robinson granted the motion and ordered the parties' counsel to select a new date for the status conference. Subsequently, Judge Robinson issued a separate order requiring an appearance to be filed on behalf of Barnes no later than November 21, 2014, or else the case would be dismissed. On November 17, 2014, Attorney Joseph R. Mirrione appeared on behalf of Barnes. On November 18, 2014, JDNO notices were issued providing, respectively, that a trial management conference was scheduled for December 22, 2015, and that the trial was rescheduled to January 19, 2016.

On September 25, 2015, Barnes filed a motion for a continuance of the trial on the ground that Attorney Mirrione was "relatively new counsel" who had taken over Barnes' case from Hawkins. The same day, Judge Robinson denied the motion for a continuance without prejudice to the motion being renewed at the trial management conference. Notably, Judge Robinson also stated that, if a continuance were granted at that time, it would be marked final and no additional continuances would be permitted.

On November 13, 2015, Barnes filed an amended expert witness disclosure with respect to Dr. Gorman. The amended expert witness disclosure indicated that Dr. Gorman was expected to testify that (1) "the history and physical were inadequate," (2) upon noting "gangrenous changes," the defendants failed to "take an adequate history and physical and did not order antibiotics or other appropriate tests," (3) the defendants failed to refer Barnes to a vascular surgeon in a timely manner, (4) the defendants failed to communicate with Barnes' family doctor and vascular surgeon, (5) the defendants allowed Barnes' condition to deteriorate, and (6) Barnes underwent multiple surgeries and amputations as a result of the defendants' conduct.

On November 24, 2015, the defendants filed a motion to preclude the amendment to Dr. Gorman's expert witness disclosure, to which Barnes objected. On Janu-

ary 13, 2016, after hearing argument on January 11, 2016,[3] Judge Robinson issued an order denying, without prejudice, the motion to preclude. Judge Robinson determined that Barnes should be allowed to supplement Dr. Gorman's testimony, provided that Dr. Gorman be made available for a deposition within fourteen days of the order. Additionally, Judge Robinson ordered that Barnes was "precluded from disclosing any additional experts." Judge Robinson then assigned the case to Judge Lager for the management of any pending and future pretrial motions, as well as for trial, and directed the parties to report to Judge Lager to address the scheduling of trial. On January 19, 2016, following a status and scheduling conference, Judge Lager issued a scheduling order, inter alia, rescheduling the trial date to August 15, 2016. The January 19, 2016 scheduling order did not provide for the additional disclosure of experts by Barnes.

On January 19, 2016, Barnes filed a motion for reargument and reconsideration of the portions of Judge Robinson's January 13, 2016 order precluding him from disclosing any additional experts and requiring Dr. Gorman's deposition to be conducted within fourteen days of the order. The defendants filed an objection to that motion later on the same day.

On January 29, 2016, Dr. Gorman was deposed. On February 18, 2016, upon the filing of a request to amend and without objection from the defendants, Barnes' amended revised two count complaint was deemed filed. Therein, Barnes alleged that the defendants deviated from the applicable standard of podiatric care, causing, inter alia, the partial amputations of Barnes' feet, on the grounds that (1) the defendants failed to suspect and rule out the possibility of an impairment in the blood flow to Barnes' feet, (2) they failed to refer Barnes to a vascular specialist, (3) "the history and physical were inadequate," (4) upon noting "gangrenous changes," they failed to "take an adequate history and physical and [to] order antibiotics or other appropriate tests," (5) they failed to communicate with Barnes' treating kidney doctor and vascular surgeon, and (6) they allowed Barnes' condition to deteriorate. The defendants subsequently answered the amended revised complaint, denying the material allegations therein.[4]

On February 29, 2016, Barnes filed a motion to modify the January 19, 2016 scheduling order, wherein he, inter alia, sought permission to disclose an additional expert, to which the defendants objected. On March 4, 2016, following argument, Judge Lager issued a modified scheduling order, inter alia, amending the dates by which certain witnesses had to be deposed. The modified scheduling order did not contain any provision for the disclosure of additional experts by Barnes.

On March 9, 2016, notwithstanding the portion of

Judge Robinson's January 13, 2016 order precluding Barnes from disclosing additional experts (January 13, 2016 order), Barnes filed an expert witness disclosure identifying Rakesh Shah, a cardiologist, as an additional causation expert.[5] On March 11, 2016, the defendants filed a combined objection to the expert witness disclosure of Dr. Shah and a motion to preclude Dr. Shah's expert testimony, asserting that the disclosure violated the January 13, 2016 order. Barnes subsequently filed a combined reply to the defendants' objection and an opposition to the defendants' motion to preclude.

On March 17, 2016, Barnes filed a request for argument regarding his motion for reargument and reconsideration of the January 13, 2016 order, and he reclaimed the motion to the short calendar of March 21, 2016. On March 24, 2016, Judge Robinson summarily denied both the request for argument and the motion for reargument and reconsideration. On May 12, 2016, following argument, Judge Lager sustained the defendants' objection to Barnes' expert witness disclosure of Dr. Shah and granted the defendants' motion to preclude Dr. Shah's expert testimony, stating that she was adhering to the January 13, 2016 order and noting that Judge Robinson had declined to reconsider that order.

Following Dr. Gorman's deposition on January 29, 2016, the defendants filed several motions in limine seeking to preclude the expert testimony of Dr. Gorman as to the standard of care and causation. Barnes objected to these motions. On July 26, 2016, after hearing argument on July 15, 2016, Judge Lager issued a memorandum of decision addressing the defendants' claims regarding the preclusion of Dr. Gorman's expert opinions.[6] With respect to Dr. Gorman's standard of care opinion, Judge Lager concluded that, although Dr. Gorman satisfied the minimum qualification requirements of General Statutes § 52-184c, there was an insufficient factual basis to determine whether Dr. Gorman knew the prevailing professional standard of care applicable to Dr. Daddio in Connecticut in 2011. Judge Lager stated that the court would provide Barnes with "one final opportunity" to establish the requisite foundation on August 3, 2016, the date scheduled for a *Porter* hearing, at which Barnes had to produce Dr. Gorman to be subject to examination. Turning then to the issue of causation, Judge Lager concluded that Dr. Gorman was precluded from offering expert testimony as to causation because he was not qualified and his causation opinions exceeded the scope of his expertise and were speculative.

On August 1, 2016, Barnes filed a request to disclose Dr. Shah as a causation expert, to which the defendants filed an objection. On August 2, 2016, Barnes filed a letter with the court stating that he would not produce Dr. Gorman at the scheduled August 3, 2016 hearing in light of Judge Lager's decision precluding Dr. Gorman

from testifying as to causation. On August 3, 2016, after hearing argument, Judge Lager denied Barnes' request to disclose Dr. Shah as an expert and sustained the defendants' objection to the request.

Additionally, on August 1, 2016, the defendants filed a motion for summary judgment, which they supplemented on August 8, 2016, on the ground that Barnes was unable to produce expert testimony as to the standard of care or causation and, thus, could not demonstrate a prima facie case of medical malpractice. Barnes objected to the motion for summary judgment. On August 10, 2016, following argument, Judge Lager granted the defendants' motion for summary judgment on the record. The following day, Judge Lager issued a memorandum of decision, determining that (1) there was an inadequate factual basis upon which the court could find Dr. Gorman qualified to testify as to the standard of care, (2) as she had previously concluded, Dr. Gorman was precluded from testifying as to causation, and (3) as a result of the court's rulings, Barnes lacked the expert opinions necessary to prove the elements of his medical malpractice claims and, therefore, the defendants were entitled to summary judgment. This appeal followed. Additional facts and procedural history will be set forth as necessary.

At the outset, we set forth the legal principles governing medical malpractice actions. "[T]o prevail in a medical malpractice action, the plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard. . . . Likewise, [e]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person."[7] (Citations omitted; internal quotation marks omitted.) *Procaccini* v. *Lawrence & Memorial Hospital, Inc.*, 175 Conn. App. 692, 717–18, 168 A.3d 538, cert. denied, 327 Conn. 960, 172 A.3d 801 (2017).

I

The administratrix raises several claims on appeal relating to the January 13, 2016 order. Specifically, the administratrix asserts that (1) the January 13, 2016 order was improper because (a) it constituted a sanction of preclusion governed by Practice Book § 13-4 (h), the requirements of which were not satisfied, (b) the defendants did not request that the court enter an order precluding Barnes from disclosing additional experts, and (c) good cause existed to allow Barnes to disclose additional experts, and (2) Judge Lager erred in adhering to the January 13, 2016 order. For the rea-

sons set forth subsequently in this opinion, we reject these claims.

## A

We first address the administratrix' claims that the January 13, 2016 order was improper because (1) it constituted a sanction of preclusion subject to the requirements Practice Book § 13-4 (h), which were not met, (2) the defendants did not request that the court preclude Barnes from disclosing additional experts, and (3) good cause existed to permit Barnes to disclose additional experts. We disagree.

The following additional facts and procedural history are relevant to our disposition of these claims. On January 11, 2016, the parties appeared before Judge Robinson to present argument on the defendants' motion to preclude Barnes' amendment to Dr. Gorman's expert witness disclosure. During argument, Barnes' counsel represented that he might seek to disclose other experts in addition to Dr. Gorman. Judge Robinson indicated that she was "concerned" by that representation. Barnes' counsel then reiterated that "there might be another disclosure . . . ." In response, the defendants' counsel stated that "if we're going to start getting into—into more experts, then, I really have a concern. I—I mean, that is really concerning, because this case is supposed to be going to trial next week."[8] Additionally, the defendants' counsel stated that she "object[ed] . . . to any further disclosures."

Thereafter, on January 13, 2016, Judge Robinson denied the defendants' motion to preclude without prejudice, stating in relevant part: "Though the defendant[s] [make] many compelling and persuasive arguments, the court ultimately holds that [Barnes] should be allowed to supplement the opinions of his already disclosed [expert, i.e., Dr. Gorman], provided the expert is made available for [a] deposition within fourteen days of this order. *Further*, [Barnes] *is precluded from disclosing any additional experts*." (Emphasis added.)

### 1

The administratrix contends that the January 13, 2016 order was improper because it constituted a sanction of preclusion governed by Practice Book § 13-4 (h) and it did not satisfy the requirements set forth therein. The defendants argue that the January 13, 2016 order was a case management decision that Judge Robinson had the inherent authority to enter. We agree with the defendants.

Resolving this claim requires us to interpret the nature of the January 13, 2016 order. "The construction of an order is a question of law for the court, and the court's review is plenary. . . . As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The legal effect of an order must be declared in light of the literal

meaning of the language used. The unambiguous terms of [an order], like the terms in a written contract, are to be given their usual and ordinary meaning. . . . [An order] must be construed in light of the situation of the court, what was before it, and the accompanying circumstances." (Citations omitted; internal quotation marks omitted.) *In re Jacklyn H.*, 162 Conn. App. 811, 830, 131 A.3d 784 (2016).

The administratrix urges us to construe the January 13, 2016 order as a sanction of preclusion governed by Practice Book § 13-4 (h). Section 13-4 establishes procedures, inter alia, for the disclosures and depositions of experts in civil matters. Section 13-4 (h) provides: "A judicial authority may, after a hearing, impose sanctions on a party for failure to comply with the requirements of this section. An order precluding the testimony of an expert witness may be entered only upon a finding that: (1) the sanction of preclusion, including any consequence thereof on the sanctioned party's ability to prosecute or to defend the case, is proportional to the noncompliance at issue, and (2) the noncompliance at issue cannot adequately be addressed by a less severe sanction or combination of sanctions." The administratrix contends that the January 13, 2016 order was entered without the hearing and findings required by this rule of practice.

In response, the defendants argue that the January 13, 2016 order was a case management decision that Judge Robinson had the inherent authority to enter. "[C]ase management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice." (Citation omitted.) *Krevis* v. *Bridgeport*, 262 Conn. 813, 819, 817 A.2d 628 (2003). As our Supreme Court has observed, "[i]t is well known that justice delayed is justice denied. In order to fulfill our responsibility of dispensing justice we in the judiciary must adopt an effective system of caseflow management. Caseflow management is based upon the premise that it is the responsibility of the court to establish standards for the processing of cases and also, when necessary, to enforce compliance with such standards. Our judicial system cannot be controlled by the litigants and cases cannot be allowed to drift aimlessly through the system. To reduce delay while still maintaining high quality justice, it is essential that we have judicial involvement in managing cases." *In re Mongillo*, 190 Conn. 686, 690–91, 461 A.2d 1387 (1983), overruled in part on other grounds, *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999).

As the defendants correctly posit, the January 13, 2016 order was a case management decision, rather than a sanction of preclusion. During argument on the defendants' motion to preclude the amendment to Dr.

Gorman's expert witness disclosure, Judge Robinson expressed concern regarding the representation made by Barnes' counsel that he might seek to disclose additional experts. At the time of argument and when Judge Robinson entered the January 13, 2016 order, the trial in this action, which had been pending since February, 2012, was scheduled to begin on January 19, 2016. The trial had been rescheduled once before in November, 2014, following Attorney Mirrione's appearance on behalf of Barnes. In addition, pursuant to the scheduling order in effect at the time of argument and when the January 13, 2016 order was entered, the deadline by which Barnes had to disclose his experts—September 1, 2013—had long expired. By permitting Barnes to amend the expert witness disclosure of Dr. Gorman and continuing the trial date to accommodate that supplementation, Judge Robinson simultaneously ordered that Barnes could not disclose any additional experts, with the ostensible purpose of preventing any legerdemain. Furthermore, nothing in the record indicates that Judge Robinson entered the January 13, 2016 order as a result of a violation by Barnes of any of the provisions of Practice Book § 13-4, which, by its plain terms, is necessary in order to invoke § 13-4 (h).[9] For these reasons, we conclude that the January 13, 2016 order was a case management decision, as opposed to a sanction of preclusion, that Judge Robinson had the inherent authority to enter. Therefore, the administratrix' reliance on § 13-4 (h) is misplaced.[10]

2

The administratrix also claims that the January 13, 2016 order was improper because, in seeking to preclude Barnes from amending the expert witness disclosure of Dr. Gorman, the defendants did not request, as relief, that Judge Robinson preclude Barnes from disclosing additional experts. In light of our conclusion in part I A 1 of this opinion that the January 13, 2016 order was a case management decision, we reject this claim. "[T]rial courts have wide latitude to manage cases consistent with judicial economy and justice . . . ." (Internal quotation marks omitted.) *Griswold* v. *Camputaro*, 331 Conn. 701, 709, 207 A.3d 512 (2019), quoting *Krevis* v. *Bridgeport*, supra, 262 Conn. 818–19. Thus, notwithstanding that the defendants did not request such an action, it was within Judge Robinson's broad discretion, exercised pursuant to her inherent authority to manage her docket, to preclude Barnes from disclosing additional experts.[11]

3

The administratrix next claims that Judge Robinson abused her discretion in entering the January 13, 2016 order because good cause existed to permit Barnes to disclose additional experts. Specifically, the administratrix asserts that, as a result "of the manner in which [Hawkins] conducted this case" before Attorney Mirri-

one appeared on behalf of Barnes in November, 2014, Attorney Mirrione was initially unaware that he might need to retain other experts and Attorney Mirrione worked diligently to prosecute the case. This claim is unavailing.

As we concluded in part I A 1 of this opinion, the January 13, 2016 order constituted a case management decision. "We review case management decisions for abuse of discretion, giving [trial] courts wide latitude. . . . A party adversely affected by a [trial] court's case management decision thus bears a formidable burden in seeking reversal. . . . A trial court has the authority to manage cases before it as is necessary. . . . Deference is afforded to the trial court in making case management decisions because it is in a much better position to determine the effect that a particular procedure will have on both parties. . . . The case management authority is an inherent power necessarily vested in trial courts to manage their own affairs in order to achieve the expeditious disposition of cases. . . . The ability of trial judges to manage cases is essential to judicial economy and justice." (Internal quotation marks omitted.) *Levine* v. *Hite*, 189 Conn. App. 281, 296, 207 A.3d 100 (2019).

In the present case, it was well within Judge Robinson's wide discretion to preclude Barnes from disclosing additional experts where the parties were on the eve of trial, which had been rescheduled previously, in a case pending since February, 2012, and where the date by which Barnes had to disclose his experts had passed.[12] Accordingly, we conclude that Judge Robinson did not abuse her discretion in entering the January 13, 2016 order.[13]

B

We next turn to the administratrix' claim that Judge Lager erred in adhering to the January 13, 2016 order. We are not persuaded.

The following additional facts and procedural history are relevant to our resolution of this claim. On January 19, 2016, after Judge Robinson had entered the January 13, 2016 order, Judge Lager issued a scheduling order that did not contain any provision permitting Barnes to disclose additional experts. On that same day, Barnes filed the motion for reargument and reconsideration of the January 13, 2016 order; however, he did not file a caseflow request for immediate consideration of the motion and he did not mark it "ready" or "take papers" when it printed on the February 1, 2016 short calendar.

On March 4, 2016, Judge Lager heard argument on Barnes' motion to modify the January 19, 2016 scheduling order, wherein Barnes, inter alia, requested permission to disclose an additional expert, and the defendants' objection thereto. On the record, Judge Lager stated that she was adhering to the January 13, 2016

order, which she described as "a very clear and direct order" precluding Barnes from disclosing additional experts. Judge Lager determined that she would not hear reargument on the January 13, 2016 order because Judge Robinson was the proper judicial authority from whom Barnes had to seek reargument and reconsideration of the order.[14] Judge Lager also stated that she "believe[d] at the moment [that the January 13, 2016 order was] the law of the case." Thereafter, Judge Lager issued a modified scheduling order, which did not contain any provision for the disclosure of additional experts by Barnes.

On May 12, 2016, following Judge Robinson's March 24, 2016 denial of Barnes' motion for reargument and reconsideration of the January 13, 2016 order, the parties presented argument to Judge Lager on the defendants' combined objection to Barnes' expert witness disclosure of Dr. Shah and motion to preclude Dr. Shah's expert opinion. During argument, Barnes' counsel argued that, notwithstanding Judge Robinson's denial of the motion for reargument and reconsideration, Judge Lager was not bound by the January 13, 2016 order and could examine its propriety. In response, Judge Lager stated that she incorrectly referred to the January 13, 2016 order as the law of the case during the March 4, 2016 proceeding and that she could not revisit the January 13, 2016 order on the basis that it was a "discovery sanction" over which Judge Robinson "had full and complete authority . . . ."[15] In the May 12, 2016 order sustaining the defendants' objection to Dr. Shah's expert witness disclosure and granting the defendants' motion to preclude Dr. Shah's expert opinion, Judge Lager reasoned that she was adhering to the January 13, 2016 order, noting that Judge Robinson had declined to reconsider it.

The administratrix asserts that Judge Lager erred in adhering to the January 13, 2016 order because she improperly construed the January 13, 2016 order as the law of the case. The record reveals, however, that Judge Lager did not rely on the law of the case doctrine[16] in adhering to the January 13, 2016 order. Although Judge Lager made a passing reference during the March 4, 2016 proceeding to the January 13, 2016 order as the law of the case, the crux of Judge Lager's decision declining to hear reargument on the January 13, 2016 order was that Judge Robinson was the proper judicial authority from whom Barnes had to seek adjudication of his pending motion for reargument and reconsideration of that order. See Practice Book § 11-12 (c) ("The motion to reargue shall be considered *by the judge who rendered the decision or order*. Such judge shall decide, without a hearing, whether the motion to reargue should be granted. If the judge grants the motion, the judge shall schedule the matter for hearing on the relief requested." [Emphasis added.]) During the subsequent May 12, 2016 proceeding, Judge Lager explicitly stated

that the January 13, 2016 order was not the law of the case, but rather a discovery sanction imposed by Judge Robinson that she could not revisit. There is no basis for the administratrix' contention that Judge Lager improperly relied on the law of the case doctrine, and she does not present any other cognizable argument challenging the basis of Judge Lager's decisions adhering to the January 13, 2016 order. Thus, this claim fails.

## II

We next address the administratrix' claim that Judge Lager erred in precluding Dr. Gorman from offering expert opinions as to the standard of care and causation. For the reasons that follow, we disagree.

We first set forth the standard of review and legal principles governing our resolution of the administratrix' claim. "The decision to preclude a party from introducing expert testimony is within the discretion of the trial court. . . . On appeal, that decision is subject only to the test of abuse of discretion." (Internal quotation marks omitted.) *Ruff* v. *Yale-New Haven Hospital, Inc.*, 172 Conn. App. 699, 709, 161 A.3d 552 (2017).

"Our standard regarding the admissibility of expert testimony is well settled. Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues. . . . In other words, [i]n order to render an expert opinion the witness must be qualified to do so and there must be a factual basis for the opinion." (Internal quotation marks omitted.) *Rockhill* v. *Danbury Hospital*, 176 Conn. App. 39, 61, 168 A.3d 630 (2017); see also Conn. Code Evid. § 7-2.[17]

## A

We first turn to the administratrix' claim that Judge Lager improperly precluded Dr. Gorman's standard of care opinion. This claim is unavailing.

We begin by setting forth the following legal principles applicable to the disposition of this claim. General Statutes § 52-184c (a) provides: "In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b,[18] the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate

by reasonably prudent similar health care providers." (Footnote added.) General Statutes § 52-184c (c) provides: "If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider.' " General Statutes § 52-184c (d) provides: "Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c)[19] of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim." (Footnote added.)

Our Supreme Court has explained that the provisions of § 52-184c "have done nothing to abrogate the fundamental requirement . . . that an expert testifying about the standard of care must know what that standard is in a particular situation. . . . [T]he requirements under § 52-184c (d) do not affect the trial court's discretion to determine whether a proffered expert is qualified to testify as an expert. See Conn. Code Evid. §§ 1-3[20] and 7-2 . . . . Indeed, § 52-184c merely sets out minimum qualification standards for experts in medical malpractice cases. Thus, a trial court that permits a physician to testify as an expert without first determining whether he or she has a sufficient basis for knowing the 'prevailing' standard of care is abdicating its evidentiary gatekeeping responsibilities." (Citations omitted; footnotes altered.) *Grondin* v. *Curi*, 262 Conn. 637, 656–57, 817 A.2d 61 (2003).

The following additional facts and procedural history are relevant to our disposition of the administratrix' claim. After Dr. Gorman had been deposed on January 29, 2016, the defendants filed several motions in limine requesting, inter alia, that the trial court preclude Dr. Gorman's standard of care opinion on the basis that Dr. Gorman was not qualified to testify. On July 15, 2016, Judge Lager heard argument on, inter alia, the issue of whether preclusion of Dr. Gorman's standard of care opinion was warranted. Following argument,

with Judge Lager's permission, Barnes filed an affidavit of Dr. Gorman dated July 18, 2016 (July 18, 2016 affidavit), and the defendants filed an affidavit of their expert, Joseph Treadwell.

On July 26, 2016, in addressing whether preclusion of Dr. Gorman's standard of care opinion was warranted, Judge Lager concluded that Dr. Gorman satisfied the "minimum qualification standards for experts in medical malpractice cases" because Dr. Gorman "was actively engaged in the practice of podiatric medicine" at the time of the defendants' alleged professional negligence in 2011 and, therefore, Dr. Gorman met the requirements of subdivision (d) (2) of § 52-184c. Citing *Grondin*, Judge Lager then observed that the next step was to determine whether Dr. Gorman had a sufficient basis for knowing the prevailing professional standard of care applicable to Dr. Daddio in Connecticut in 2011.

Following a review of Dr. Gorman's deposition and the affidavits of Dr. Gorman and Dr. Treadwell, Judge Lager determined that "[Dr.] Gorman's knowledge of the standard of care applicable to [Dr.] Daddio in Connecticut is scant." Judge Lager noted that Dr. Gorman averred in the July 18, 2016 affidavit that, in comparing his board certification to that of [Dr.] Daddio's, the "standard of care for treating patients is the same"; (internal quotation marks omitted); however, on the basis of the record before her, Judge Lager determined that "[t]here is no foundation for [Dr.] Gorman's statement that the podiatric standard of care in Connecticut is the same as the podiatric standard of care in Pennsylvania where [Dr. Gorman] is licensed and has practiced exclusively." Judge Lager proceeded to conclude that "[o]n the present record, there is an inadequate factual basis to conclude either that [Dr.] Gorman knows the prevailing professional standard of care applicable to [Dr.] Daddio in Connecticut in 2011 or that his Pennsylvania podiatric practice was governed by the same standard of care. The court is willing to give [Barnes] one final opportunity to establish the requisite foundation by holding a hearing on August 3, 2016 . . . at which Dr. Gorman must appear and be subject to examination and cross-examination on this issue . . . ." As discussed more comprehensively in part II B of this opinion, Judge Lager proceeded to rule that Dr. Gorman was precluded from offering expert testimony as to causation.

On August 2, 2016, Barnes filed a letter addressed to Judge Lager and the defendants' counsel indicating that, in light of Judge Lager's preclusion of Dr. Gorman's causation opinion, Barnes would not produce Dr. Gorman at the scheduled hearing on August 3, 2016. On August 3, 2016, the parties appeared before Judge Lager to, inter alia, present argument on Barnes' August 1, 2016 request to disclose Dr. Shah as a causation expert and the defendants' objection thereto. After Judge Lager

had denied the request to disclose and sustained the defendants' objection, there was a discussion on the record about the defendants' pending motion for summary judgment. During that discussion, Judge Lager stated the following: "I think the ruling [on July 26, 2016] is clear that the [c]ourt felt there was an inadequate factual basis for the [c]ourt to make that determination [regarding Dr. Gorman's knowledge of the applicable standard of care] and was going to provide today, not any other day, but today, [Barnes] that opportunity to establish that basis. That has not been done. So as of today, the [c]ourt can only conclude that there is no factual basis, based on the record before it."

On August 10, 2016, Judge Lager heard argument on the defendants' motion for summary judgment, to which Barnes had filed an objection accompanied by an affidavit of Dr. Gorman dated August 8, 2016 (August 8, 2016 affidavit). On August 11, 2016, in her memorandum of decision granting the defendants' motion for summary judgment, Judge Lager stated in relevant part: "In the ruling dated July 26, 2016 . . . this court focused on the lack of foundational evidence upon which the court could make a finding that '[Dr.] Gorman knows the prevailing professional standard of care applicable to [Dr.] Daddio in Connecticut in 2011 or that his Pennsylvania podiatric practice was governed by the same standard of care.' . . . Although the court was aware that [Dr.] Gorman averred in [the July 18, 2016 affidavit] that the 'standard of care for treating patients is the same,' this conclusory statement lacked foundation. In [the August 8, 2016 affidavit], [Dr.] Gorman aver[red] that: 'The standard of care is the same for all podiatrists. The national standard of care as to what is expected of a reasonable, prudent podiatrist [with respect to] the diagnosis and treatment of a patient under the same circumstance is the same in Connecticut as it is in all other states.' The foundation for this averral is that podiatry students 'in the United States are trained in the same manner; [t]he same textbooks and reference materials are used.' " Judge Lager then concluded that, in light of Dr. Gorman's testimony during his deposition that he did not know the standard of care in Connecticut, the "conclusory statements in [the August 8, 2016 affidavit]" failed to provide the "requisite foundation for establishing [Dr.] Gorman's knowledge of the prevailing professional standard of care in this case" and "[t]here is an inadequate factual basis before the court to find [Dr.] Gorman qualified to testify as to the standard of care." For these reasons, Judge Lager, in effect, precluded Dr. Gorman's standard of care opinion.

The administratrix asserts that Judge Lager erred in precluding Dr. Gorman's standard of care opinion because physicians, including podiatrists such as Dr. Gorman, are governed by a national standard of care in medical malpractice cases. The administratrix also contends that Dr. Gorman was qualified to offer a stan-

dard of care opinion on the ground that evidence was produced illustrating, inter alia, that Dr. Gorman had treated thousands of podiatric patients since 1967 and trained residents in the field of podiatry.[21] These contentions are unavailing.

The relevant inquiry here is whether Dr. Gorman knew what the prevailing professional standard of care applicable to Dr. Daddio was in Connecticut in 2011. Dr. Gorman's January 29, 2016 deposition testimony strongly suggested that he was *not* familiar with the standard of care.[22] Judge Lager found that the July 18, 2016 affidavit in which Dr. Gorman asserted knowledge of a national standard of care was conclusory and lacked foundation. Judge Lager then considered the August 8, 2016 affidavit, in which Dr. Gorman averred that, because (1) all students enrolled in podiatry schools in the United States are trained in the same manner, (2) all podiatrists attend the same seminars and conferences to earn continuing education credits, and (3) there are many organizations in the United States offering continuing education courses relating to podiatric medicine, "[t]he standard of care is the same for all podiatrists" and "[t]he national standard of care as to what is expected of a reasonable, prudent podiatrist [with respect to] the diagnosis and treatment of a patient under the same circumstance is the same in Connecticut as it is in all other states." Judge Lager found that such affidavit did nothing to cure the conclusory nature of, and lack of foundation for, Dr. Gorman's opinions as to standard of care. As Judge Lager reasonably determined, Dr. Gorman's averments failed to establish that Dr. Gorman had the requisite knowledge of the applicable standard of care in order to testify thereto. Accordingly, we conclude that Judge Lager did not abuse her discretion in precluding Dr. Gorman's standard of care opinion.

### B

We next consider the administratrix' claim that Judge Lager erred in precluding Dr. Gorman's causation opinion. We are not persuaded.

"All medical malpractice claims, whether involving acts or inactions of a defendant physician, require that a defendant physician's conduct proximately cause the plaintiff's injuries. The question is whether the conduct of the defendant was a substantial factor in causing the plaintiff's injury. . . . This causal connection must rest upon more than surmise or conjecture. . . . A trier is not concerned with possibilities but with reasonable probabilities. . . . The causal relation between an injury and its later physical effects may be established by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question. . . .

"To be reasonably probable, a conclusion must be more likely than not. . . . Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony. . . . An expert . . . need not use talismanic words to show reasonable probability. . . . There are no precise facts that must be proved before an expert's opinion may be received in evidence. . . .

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . As [our Supreme Court] observed . . . [l]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause, which [our Supreme Court has] defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The proximate cause requirement tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . .

"In other words, [p]roximate cause [is] defined as an actual cause that is a substantial factor in the resulting harm . . . . [T]he inquiry fundamental to all proximate cause questions . . . [is] whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citations omitted; internal quotation marks omitted.) *Ward* v. *Ramsey*, 146 Conn. App. 485, 490–92, 77 A.3d 935, cert. denied, 310 Conn. 965, 83 A.3d 345 (2013).

The following additional facts and procedural history are relevant to our resolution of the administratrix' claim. Following Dr. Gorman's deposition on January 29, 2016, the defendants filed motions in limine seeking, inter alia, to preclude Dr. Gorman's expert testimony as to causation on the grounds that Dr. Gorman's causation opinions (1) had no factual basis underlying them, (2) exceeded the scope of his expertise, and (3) were speculative. On July 15, 2016, the parties presented argument, inter alia, as to whether Dr. Gorman's causation opinion should be precluded. Thereafter, Barnes filed the July 18, 2016 affidavit, and the defendants filed

the affidavit of Dr. Treadwell.

On July 26, 2016, Judge Lager ordered that Dr. Gorman was precluded from testifying as to causation. Judge Lager summarized Dr. Gorman's causation opinion to be that the cause of the partial amputations of Barnes' feet was Dr. Daddio's failures to suspect that Barnes had "vascular insufficiency" and to refer Barnes to a vascular surgeon. Judge Lager then observed: "While [Dr.] Gorman has treated patients with vascular problems and knows something about vascular insufficiency in diabetic podiatric patients [such as Barnes], he is not a vascular physician or vascular surgeon and does not perform the types of amputations that [Barnes' vascular surgeon] performed on Barnes. [The] mere fact that he is not a vascular physician or surgeon is not disqualifying. . . . However, in his deposition testimony, [Dr.] Gorman repeatedly deferred to the expertise of a vascular surgeon on the issue of causation. Both his deposition testimony and the [July 18, 2016 affidavit] support the conclusion that, while it is his practice to refer patients such as Barnes to a vascular surgeon in an effort to avoid outcomes such as the one which occurred in this case, [Dr.] Gorman does not have any basis other than speculation to render a causation opinion here. [Dr.] Gorman is unable to pinpoint whether an alleged breach of the standard of care . . . or some other underlying condition or behavior led to the amputations. Finally . . . [Dr.] Gorman could not identify the specific evidence that he relied upon in the underlying medical records which eliminate all other probable causes of the amputations other than [Dr.] Daddio's alleged negligence." (Citation omitted; footnotes omitted.) Concluding that "[Dr.] Gorman is insufficiently qualified to offer an opinion as to the actual and proximate cause of Barnes' amputations, that his opinions admittedly exceed the scope of his expertise and that his opinions are speculative," Judge Lager precluded Dr. Gorman's causation opinion.

The administratrix contends that the record demonstrates that Dr. Gorman is a board certified podiatrist with over fifty years of experience in, inter alia, treating podiatric patients, teaching students, and attending lectures, and that Dr. Gorman was able to testify with reasonable medical probability that Barnes' injuries were caused by an untreated infection that led to additional complications and, ultimately, the partial amputations of Barnes' feet. As reflected in his deposition and/ or in the July 18, 2016 affidavit, however, Dr. Gorman averred that he did not know whether the partial amputations of Barnes' feet could have been prevented and that a vascular surgeon was needed to opine as to whether the amputations could have been avoided but for the defendants' alleged breach of the standard of care. The administratrix fails to cite to any portion of the record undermining Judge Lager's determination that Dr. Gorman could not testify that the defendants'

alleged breach of the standard of care led to the partial amputations of Barnes' feet. Accordingly, we cannot conclude that Judge Lager abused her discretion in precluding Dr. Gorman's causation opinion.

### III

Finally, relying on the presumption that the trial court erred in precluding Barnes from disclosing additional experts and Dr. Gorman's expert opinions as to the standard of care and causation, the administratrix claims that there exist genuine issues of material fact and, thus, Judge Lager improperly rendered summary judgment in favor of the defendants. This claim merits little discussion. As set forth in parts I and II of this opinion, the court acted properly in precluding Barnes from disclosing additional experts and Dr. Gorman from offering standard of care and causation opinions. As a result, Barnes was unable to produce expert testimony establishing the applicable standard of care, a breach of the standard of care, and causation, and, therefore, he could not establish a prima facie case of medical malpractice. See *Procaccini* v. *Lawrence & Memorial Hospital, Inc.*, supra, 175 Conn. App. 717–18; see also *Dorreman* v. *Johnson*, 141 Conn. App. 91, 98–99, 60 A.3d 993 (2013) (affirming summary judgment in favor of defendant in medical malpractice case where plaintiffs failed to provide expert opinions with regard to requisite standard of care, deviation from standard of care, and causation). Accordingly, we conclude that Judge Lager properly rendered summary judgment in favor of the defendants.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On December 9, 2016, during the pendency of this appeal, counsel for the named plaintiff, Kenneth Barnes, filed a suggestion of death indicating that Kenneth Barnes had died. On September 26, 2017, Kenneth Barnes' counsel filed a motion to substitute Sherry West Barnes, administratrix of the estate of Kenneth Barnes, as the plaintiff, which this court granted on October 27, 2017. For purposes of clarity, we will refer in this opinion to Kenneth Barnes by his last name and to Sherry West Barnes as the administratrix.

[2] On June 29, 2015, in relation to disciplinary proceedings commenced in 2014; see *Chief Disciplinary Counsel* v. *Hawkins*, Superior Court, judicial district of New Haven, Docket No. CV-14-6048369-S; Hawkins permanently resigned from the Connecticut bar and waived his privilege of applying for readmission.

[3] A recitation of what transpired at the January 11, 2016 hearing is provided in part I A of this opinion.

[4] The defendants also asserted a statute of limitations defense as to both counts of the amended revised complaint. Barnes subsequently filed a reply denying the allegations underlying that defense.

[5] The expert witness disclosure indicated that Dr. Shah was expected to testify as to the standard of care as well. At a subsequent hearing before Judge Lager, Barnes' counsel clarified that he was seeking to disclose Dr. Shah as a causation expert only.

[6] In a motion in limine filed on April 18, 2016, and supplemented on June 23, 2016, the defendants asserted that Dr. Gorman's expert opinions failed to satisfy the requirements of *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and requested that the court hold a hearing pursuant to *Porter*. Those claims were not argued on July 15, 2016, or addressed on the merits in the July

26, 2016 memorandum of decision; instead, Judge Lager scheduled argument on the *Porter* issues for August 3, 2016.

[7] In rare cases, expert testimony is unnecessary to satisfy the elements of a medical malpractice claim. See *Rosa* v. *Lawrence & Memorial Hospital*, 145 Conn. App. 275, 303–304, 74 A.3d 534 (2013) ("An exception to the general rule with regard to expert medical opinion evidence is when the medical condition is obvious or common in everyday life. . . . Similarly, expert opinion may not be necessary as to causation of an injury or illness if the plaintiff's evidence creates a probability so strong that a lay jury can form a reasonable belief. . . . Expert opinion may also be excused in those cases where the professional negligence is so gross as to be clear even to a lay person." [Internal quotation marks omitted.]); *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 613–14, 816 A.2d 719 ("[e]xcept in the unusual case where the want of care or skill is so gross that it presents an almost conclusive inference of want of care . . . the testimony of an expert witness is necessary to establish both the standard of proper professional skill or care on the part of a physician . . . and that the defendant failed to conform to that standard of care" [internal quotation marks omitted]), cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003). The administratrix does not claim that any exceptions apply to negate the necessity of expert testimony in this case.

[8] At the time of argument on the motion to preclude, the trial was scheduled to begin on January 19, 2016, eight days later.

[9] In conjunction with her claim that the January 13, 2016 order was a sanction of preclusion, the administratrix asserts that the January 13, 2016 order fails to satisfy the test set forth in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001). In *Millbrook*, our Supreme Court established that "[i]n order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. . . . Second, the record must establish that the order was in fact violated. . . . Third, the sanction imposed must be proportional to the violation." Id. As we have explained in this opinion, the January 13, 2016 order was a case management decision, rather than a sanction entered as a result of Barnes violating an order. Accordingly, *Millbrook* is inapposite.

[10] The administratrix notes that Judge Lager, during the May 12, 2016 hearing on the defendants' combined objection to Barnes' expert witness disclosure of Dr. Shah and motion to preclude Dr. Shah's expert testimony, characterized the January 13, 2016 order as a "sanction [that Judge Robinson] could appropriately impose under Practice Book [§] 13-4 (h)" and as a "discovery sanction . . . ." Because the construction of the January 13, 2016 order is a question of law subject to our plenary review; *In re Jacklyn H.*, supra, 162 Conn. App. 830; we do not defer to Judge Lager's interpretation of the January 13, 2016 order.

[11] We also observe that the issue of precluding Barnes from disclosing additional experts was raised during argument on the defendants' motion to preclude the amendment to Dr. Gorman's expert witness disclosure. After Barnes' counsel had represented that he was considering the possibility of disclosing additional experts and Judge Robinson had expressed concern with respect to that representation, the defendants' counsel stated that she was also concerned by Barnes potentially seeking to disclose additional experts and that she objected to any further disclosures.

[12] The administratrix also claims that Barnes was harmed as a result of the January 13, 2016 order. Because we conclude that Judge Robinson did not abuse her discretion in entering the January 13, 2016 order, we need not address this claim.

[13] In her principal appellate brief, the administratrix also claimed that Judge Robinson's March 24, 2016 denial of Barnes' motion for reargument and reconsideration of the January 13, 2016 order was erroneous. During oral argument before this court, however, the administratrix' counsel stated: "Now, you know, what we appealed on is Judge Robinson's decision not to allow any additional experts. A lot has been made . . . about the forty-six days between [counsel] making this motion to reargue and it ultimately being decided by Judge Robinson not to allow reargument. That somehow or another we did something wrong and that had that been argued or decided or something had happened earlier there would be a different outcome. You know, [the administratrix is] not challenging that [Judge Robinson] decided not to let [counsel] reargue. What [the administratrix is] challenging is that the initial decision was wrong." We interpret counsel's statements to be an abandonment of the administratrix' claim challenging the denial of the

motion for reargument and reconsideration and, thus, we do not address that claim.

In addition, without citation to the record, the administratrix claims that Judge Robinson erred when she purportedly failed to give Barnes a continuance to disclose an additional expert. There is nothing in the record to indicate that Barnes requested that Judge Robinson grant him a continuance to disclose an additional expert and, therefore, this claim lacks merit.

[14] At the time of argument on March 4, 2016, Barnes had not reclaimed the motion for reargument and reconsideration of the January 13, 2016 order.

[15] As we concluded in part I A 1 of this opinion, the January 13, 2016 order was a case management decision.

[16] "The law of the case doctrine provides that when a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Levine* v. *Hite*, supra, 189 Conn. App. 297.

[17] Section 7-2 of the Connecticut Code of Evidence provides: "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue."

[18] General Statutes § 52-184b provides in relevant part: "(a) For the purposes of this section, 'health care provider' means any person, corporation, facility or institution licensed by this state to provide health care or professional services, or an officer, employee or agent thereof acting in the course and scope of his employment. . . ."

[19] Dr. Daddio is a board certified podiatrist and, therefore, the definition of a "similar health care provider" set forth in subsection (c) of General Statutes § 52-184c is applicable in the present case. Subsection (b) of § 52-184c applies only to a "defendant health care provider [who] is not certified by the appropriate American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist"; (emphasis omitted; internal quotation marks omitted) *Grondin* v. *Curi*, 262 Conn. 637, 650 n.15, 817 A.2d 61 (2003); and, accordingly, that subsection is not germane here.

[20] Section 1-3 of the Connecticut Code of Evidence provides: "(a) Questions of admissibility generally. Preliminary questions concerning the qualification and competence of a person to be a witness, the existence of a privilege or the admissibility of evidence shall be determined by the court.

"(b) Admissibility conditioned on fact. When the admissibility of evidence depends upon connecting facts, the court may admit the evidence upon proof of the connecting facts or subject to later proof of the connecting facts."

[21] The administratrix also claims that Judge Lager erroneously concluded that Dr. Gorman failed to meet the requirements of § 52-184c. The administratrix apparently overlooks that, as set forth previously in this opinion, Judge Lager concluded that Dr. Gorman satisfied the requirements of subdivision (2) of § 52-184c (d).

[22] Dr. Gorman testified during his deposition that "it was [Dr. Daddio's] responsibility as the—as we say, captain of the ship, in Pennsylvania, I don't know what you have [in Connecticut]" and that he had "no idea" whether Connecticut abided by the same standard.